**Dr. Gerald FINKEL, as Chairman of the Joint Industry Board of the Electrical Industry, Plaintiff,**

v.

**OMEGA COMMUNICATION SERVICES, INC., Defendant.**

**No. 06–CV–3597 (JG)(JMA).**

United States District Court, E.D. New York.

Feb. 25, 2008.

Eyad Asad, Cohen, Weiss and Simon, LLP, New York, NY, for Plaintiffs.

## ORDER

JOHN GLEESON, District Judge.

No objections having been made, I hereby adopt Judge Azrack's Report and Recommendation dated January 23, 2008. The Clerk is respectfully directed to enter judgment in accordance with the recommendation.

So ordered.

## REPORT AND RECOMMENDATION

AZRACK, United States Magistrate Judge.

Plaintiff Gerald Finkel, as Chairman of the Joint Industry Board of the Electrical Industry (the "Joint Board"), brings this action against defendant Omega Communication Services, Inc. ("Omega") pursuant to sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to recover delinquent contributions to employee benefit plans and other payments allegedly owed to the Joint Board. Although Omega was properly served with copies of the summons and complaint, it failed to appear in or otherwise defend against the action, and plaintiff moved for a default judgment. (Docket No. 6, May 4, 2007.) On May 9, 2007, the Clerk of the Court entered the default. (Docket No. 7, May 9, 2007.) By Order dated May 21, 2007, plaintiff's motion for default judgment was referred to me by the Honorable John Gleeson for a Report and Recommendation on plaintiff's application for damages, attorneys' fees and costs. For the reasons set forth below, I respectfully recommend that a judgment of $122,846.59 be entered against defendant. This award reflects $117,683.01 in unpaid contributions, interest, and liquidated damages, and $5,163.58 in attorneys' fees and costs.

### I.  BACKGROUND

The Joint Board is the administrator and fiduciary of various employee benefit plans created and maintained pursuant to collective bargaining agreements between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL–CIO (the "Union") and various employers in electrical-related industries. (Compl. ¶ 4–5; see also Decl. of K. Duffy in Supp. of Req. to Enter Default J. ¶ 4 ("Duffy Decl.").) The ERISA plans include the Pension, Hospitalization and Benefit Plan of the Electrical Industry (the "PHBP"), the Dental Benefit Fund of the Electrical Industry (the "DBF"), the Deferred Salary Plan of the Electrical Industry (the "401(k) Plan"), the Educational and Cultural Trust Fund of the Electrical Industry (the "E &

C Fund"), the Annuity Plan of the Electrical Industry (the "AP"), the Vacation–Holiday Unemployment Plan of the Electrical Industry (the "VHUP"), the Health Reimbursement Account Plan of the Electrical Industry (the "HRAP"), and the National Employees Benefit Fund (the "NEBF") (collectively, the "ERISA Plans"). (Compl. ¶ 4; Duffy Decl. ¶ 4.) The Non–ERISA plans include the Electrical Employers Self Insurance Safety Plan (the "EESISP"), the Local 3 Dues Assessment ("Dues"), the Joint Industry Board Contributions ("JIB"), the Benefit and Wage Delinquency Fund (the "BWDF"), and the Committee on Political Education Fund ("COPE") (collectively, the "Non–ERISA Plans"). (Compl. ¶ 6; Duffy Decl. ¶ 6.)

Each of the ERISA plans is a jointly administered employee benefit plan and a multi-employer plan within the meaning of ERISA and the LMRA. (Compl. ¶ 5; Duffy Decl. ¶ 4.) The 401(k) Plan is a tax-qualified profit-sharing plan within the meaning of section 401(k) of the Internal Revenue Code. (Compl. ¶ 7; Duffy Decl. ¶ 5.)

Omega executed a Letter of Assent on January 5, 2006, binding itself to the May 13, 2004, through May 13, 2007, collective bargaining agreement (the "CBA"). (Compl. ¶ 11; Duffy Decl. ¶ 9 and Ex. A & B.) Defendant Omega is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a). (Compl. ¶ 10; Duffy Decl. ¶ 13.) Under the terms of the CBA, defendant was required to remit specified contribution amounts allocable to each of the Plans and to submit weekly payroll reports to the Joint Board. (Compl. ¶¶ 8, 12–13; Duffy Decl. ¶¶ 7, 11 and Ex. B.)

Plaintiff alleges that defendant violated ERISA and the LMRA by failing to make the requisite benefit contributions to the aforementioned Plans for the period of weeks ending February 1, 2006, through April 19, 2006,[1] and failing to submit the required weekly payroll reports for the same period. (Compl. ¶¶ 17–18; Duffy Decl. ¶ 18, 20.)

Plaintiff moved for default judgment on May 4, 2007. (Docket No. 6.) Plaintiff requested that the Court enter judgment against Omega in the amount of $122,845.63. The judgment requested by plaintiff consists of $89,211.47 in unpaid contributions for the period of weeks ending February 1, 2006, through April 19, 2006, $7,657.79 in interest on unpaid contributions accrued through May 4, 2007, additional interest in the amount of $18.17 per diem through the date of payment of unpaid contributions, $16,174.21 in liquidated damages, and $9,802.16 in attorneys' fees and costs. (D'Amato Decl. ¶ 37; Pl.'s Statement of Amounts Due 1; *see also* Duffy Decl. ¶ 34.)

## II. *DISCUSSION*

### A. *Liability*

██ Defendant's default amounts to an admission of liability and all of the well-pleaded allegations in plaintiff's complaint pertaining to liability are deemed true. *See Garden City Boxing Club, Inc. v. Batista*, No. 05–CV–1044 (FB)(MDG), 2007

---

1. The Complaint alleges that defendant Omega owes required contributions for the period of weeks ending January 25, 2006, through July 12, 2006. (Compl.¶ 18.) However, both the Declarations of Kevin Duffy and Suzanne E. D'Amato, as well as Plaintiff's Statement of Amounts Due, list the period for which unpaid contributions are owed as February 1, 2006, through April 19, 2006, which is the period that the Court will use to determine judgment amounts. (*See* Duffy Decl. ¶ 18, 20, 26–28, 32; Decl. of S. D'Amato in Supp. of Req. to Enter Default J. ¶ 12 ("D'Amato Decl."); Pl.'s Statement of Amounts Due 1.)

WL 4276836, at *2 (E.D.N.Y. Nov. 30, 2007) (citations omitted); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992) (citation omitted). The allegations in plaintiff's complaint establish the elements of liability required to state a claim under section 515 of ERISA, 29 U.S.C. § 1145 ("Section 515"). Section 515 states: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Plaintiff alleges that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions. (Compl.¶¶ 11–20.)

### B. *ERISA Relief*

■ Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Credit Lyonnais Sec., Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir.1999) (citations omitted). Rather, a court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. *Id.* (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997)). The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine,* 109 F.3d at 111 (citations omitted).

Plaintiff submitted the following documents in support of the motion for default judgment and damages: (1) the declaration of Kevin Duffy, an Administrator at the Joint Board; (2) the declaration of Suzanne E. D'Amato, Esq., counsel to plaintiff; (3) a copy of the CBA between the Union and defendant; (4) the Letter of Assent executed by defendant on January 5, 2006; (5) a tabulation of contributions due from defendant; and (4) documentation of attorneys' fees and costs. I consider plaintiff's submissions to be sufficient evidence to form the basis for an award of damages.

ERISA allows plan fiduciaries to bring civil actions to enforce the provisions of the plan and obtain equitable relief. 29 U.S.C. § 1132(a)(3)(B)(ii); *see also* 29 U.S.C. § 1132(d)(1). Section 515 makes clear that a participating employer's contractual duty to make contributions to multiple employer plans is a statutory requirement, and violations of section 515 are enforceable through civil actions brought under 29 U.S.C. § 1132(g). *See New York State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc.,* 382 F.3d 272, 278 (2d Cir.2004).

Since plaintiff has established liability under section 515 of ERISA, he is entitled to an award of the following: (1) the amount of unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorneys' fees and costs; and (5) such other legal and equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2).

### 1. *Unpaid Contributions*

■ Defendant, by its default, has admitted that it failed to properly report and remit contributions on behalf of employees covered by the CBA. Plaintiff seeks unpaid contributions in the amount of $89,211.47 for the period of weeks ending February 1, 2006, through April 19, 2006, including $80,871.01 in contributions to the ERISA Plans and $8,340.46 in contributions to the Non–ERISA Plans. (*See* Duffy Decl.

¶¶ 26, 32–34, and Ex. G; D'Amato Decl. ¶¶ 13–14 and Ex. A; Pl.'s Statement of Amounts Due 1.) This amount reflects contributions owed for five Union employees—Tim Powell ("Powell"),[2] Earl Mooney ("Mooney"), Gregory Buck ("Buck"), Robert Strong ("Strong"), and Peter Henry ("Henry").

All five employees worked the same number of hours per week, with one exception,[3] and the same weeks for the duration of the project. (Duffy Decl. ¶ 22.) The employees' payroll submissions indicate identical contributions owed to each of the Plans, except the 401(k) Plan.[4]

Using the information in the employees' collective payroll submissions, as well as estimated contributions based on those submissions,[5] plaintiff seeks the following contribution amounts for each benefit plan:

### TABLE A

| PLAN | CONTRIBUTION DUE |
| --- | --- |
| PHBP | $31,108.75 |
| DBF | $ 1,863.07 |
| VHUP | $16,121.16 |
| AP | $ 2,124.00 |
| HRAP | $ 8,496.00 |
| E & C Fund | $ 182.66 |
| NEBF | $ 2,778.66 |
| JIB | $ 943.60 |
| EESISP | $ 5,788.76 |
| BWDF | $ 694.78 |
| Dues | $ 913.32 |
| 401(k) | $18,196.71 |
| TOTAL | $89,211.47 |

Defendant, therefore, owes a total of $89,211.47 in unpaid contributions to the ERISA and Non–ERISA Plans. (See Duffy Decl. ¶¶ 33–34; D'Amato Decl. ¶¶ 13–14 and Ex. A; Pl.'s Statement of Amounts Due 1.) Accordingly, I respectfully recommend that plaintiff be awarded $89,211.47 for unpaid contributions.

### 2. *Interest on the Unpaid Contributions*

ERISA entitles the Joint Board to recover interest on unpaid contributions, calculated at the rate specified in the CBA or, if no such rate is specified, at the rate prescribed under Section 6621 of Title 26. See 29 U.S.C. § 1132(g)(2)(B). The CBA establishes an interest rate for the PHBP at the prime rate plus one-half percent, and the interest rate for the NEBF as ten percent. (D'Amato Decl. ¶ 18 and Ex. B–C.) The remaining ERISA Plans are governed by 26 U.S.C. § 6621, which requires an interest rate of seven percent for the time period for which plaintiffs have requested damages, to wit February 1, 2006,

---

**2.** Powell, though not a member of the Union, had equivalent "Traveler" status with respect to required contributions. (Duffy Decl. ¶ 15 n.2.)

**3.** In week 8, Buck worked one hour less than the other employees. (Duffy Decl. ¶ 30 n.6.)

**4.** The amount listed for the 401(k) Plan contribution includes Salary Deferral Contributions and Employer Contributions. Mooney and Strong elected to defer ten percent of their wages, whereas Buck elected to defer twenty percent. Employer contributions are identical for each employee. (Duffy Decl. ¶¶ 30–31 & n.7.)

**5.** Mooney, Strong and Buck submitted payroll stubs, whereas Powell and Henry did not. (Duffy Decl. ¶¶ 24, 28.) The Joint Board estimated the amount of contributions due on behalf of Henry and Powell for all Plans, including the 401(k) Plan, using the payroll submissions provided by Mooney and Strong. (Duffy Decl. ¶ 29, ¶ 32, n. 6, and Ex. G.) See also, Trustees of the Plumbers and Pipefitters Nat'l Pension Fund et al. v. Daniel Weintraub & Assoc., No. 04–CV–2611 (FB)(CLP), 2007 WL 4125453 (E.D.N.Y. Nov. 16, 2007), at *4 ("The Court is also permitted to award approximate damages when such damages are reasonable.") (citations omitted).

through April 19, 2006. (*Id.* at ¶¶ 18, 20 and Ex. E.)

With respect to the Non–ERISA Plans, the Second Circuit permits an award of prejudgment interest for LMRA claims at the Court's discretion and at a rate within the Court's discretion. *See Lodges 743 and 1746, Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO v. United Aircraft Corp.,* 534 F.2d 422, 446–47 (2d Cir.1975) (citations omitted); *see also Finkel v. Amtex Elec. Corp.,* No. 07–CV–2030 (NGG)(RER), 2007 WL 4591226, at *4 (E.D.N.Y. Dec. 27, 2007) (citing *Lodges 743 and 1746 v. United*). The Joint Board seeks interest for the Non–ERISA plans at the prime rate plus one-half percent. (D'Amato Decl. ¶ 18.) In the absence of an agreement between the parties, I see no reason to award a higher interest rate to the Non–ERISA Plans than that allotted to the ERISA Plans under 26 U.S.C. § 6621. Consequently, I recommend that an interest rate of seven percent also be utilized for the Non–ERISA Plans.

Based on these rates, Omega owes the following interest on unpaid contributions from February 1, 2006, through May 4, 2007:

**TABLE B**

| PLAN | INTEREST RATE | APPLICABLE INTEREST RATE | PER DIEM | INTEREST DUE THROUGH 5/4/07[6] |
|---|---|---|---|---|
| PHBP | Prime + ½% | 7.76%/8.25% | $ 6.74 | $2,810.01 |
| DBF | § 6621 | 7% | $ 0.35 | $ 149.65 |
| VHUP | § 6621 | 7% | $ 3.05 | $1,294.93 |
| AP | § 6621 | .7% | $ 0.37 | $ 170.60 |
| HRAP | § 6621 | 7% | $ 1.59 | $ 682.43 |
| E & C Fund | § 6621 | 7% | $ 0.00 | $ 14.67 |
| NEBF | 10% | 10% | $ 0.74 | $ 319.06 |
| JIB | § 6621 | 7% | $ 0.18 | $ 75.81 |
| EESISP | § 6621 | 7% | $ 1.11 | $ 465.31 |
| BWDF | § 6621 | 7% | $ 0.13 | $ 55.85 |
| Dues | § 6621 | 7% | $ 0.18 | $ 73.36 |
| 401(k) | § 6621 | 7% | $ 3.45 | $1,462.69 |
| | TOTAL | | $17.89 | $7,574.37 |

■ To determine the total amount of prejudgment interest due to the Joint Board as of January 23, 2008, the date of the filing of this Report and Recommendation, I multiplied the "Per Diem" interest amount from Table B by 264 days, the number of days between May 4, 2007, and January 23, 2008, and added that amount to the interest calculation from Table B. Thus, Omega owes the following total amounts of prejudgment interest on unpaid contributions accrued through January 23, 2008:

---

6. The Joint Board calculated interest due on unpaid contributions as of May 4, 2007, in its motion papers.

TABLE C

| PLAN | PER DIEM | TOTAL INTEREST DUE AS OF 1/23/08 |
|---|---|---|
| PHBP | $ 6.74 | $ 4,589.37 |
| DBF | $ 0.35 | $ 242.05 |
| VHUP | $ 3.05 | $ 2,100.13 |
| AP | $ 0.37 | $ 268.28 |
| HRAP | $ 1.59 | $ 1,102.19 |
| E & C Fund | $ 0.00 | $ 14.67 |
| NEBF | $ 0.74 | $ 514.42 |
| JIB | $ 0.18 | $ 123.33 |
| EESISP | $ 1.11 | $ 758.35 |
| BWDF | $ 0.13 | $ 90.17 |
| Dues | $ 0.18 | $ 120.88 |
| 401(k) | $ 3.45 | $ 2,373.49 |
| TOTAL | $17.89 | $12,297.33 |

Consequently, I respectfully recommend that the Court award plaintiff prejudgment interest in the amount of $12,297.33, and additional interest in the amount of $17.89 per diem through the date of payment of unpaid contributions.

### 3. *Liquidated Damages*

ERISA provides that, in addition to the unpaid contribution amount and the interest due on unpaid contributions, plaintiffs will be awarded "an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of [unpaid contributions]." 29 U.S.C. § 1132(g)(2)(C).

In the instant case, the CBA provides that liquidated damages shall be equal to twenty percent of the unpaid contributions. (D'Amato Decl. ¶ 23; Duffy Decl. Ex. B at 17.)

Using a rate of 20%, the calculation of liquidated damages on unpaid contributions to the ERISA Plans is as follows:

TABLE D

| PLAN | UNPAID CONTRIBUTIONS | LIQUIDATED DAMAGES AWARD |
|---|---|---|
| PHBP | $31,108.75 | $ 6,221.75 |
| DBF | $ 1,863.07 | $ 372.62 |
| VHUP | $16,121.16 | $ 3,224.23 |
| AP | $ 2,124.00 | $ 424.80 |
| HRAP | $ 8,496.00 | $ 1,699.20 |
| E & C Fund | $ 182.66 | $ 36.53 |
| NEBF | $ 2,778.66 | $ 555.74 |
| 401(k) | $18,196.71 | $ 3,639.34 |
| TOTAL | | $16,174.21 |

Defendant, therefore, owes $16,174.21 in liquidated damages under the terms of the CBA. Pursuant to § 1132(g)(2)(C), this greater amount is the appropriate award. Thus, I respectfully recommend that plaintiff be awarded an additional $16,174.21 in liquidated damages.

### 4. *Attorneys' Fees and Costs*

In conjunction with an award for unpaid contributions, ERISA mandates an award for reasonable attorneys' fees and costs. *See* 29 U.S.C. § 1132(g)(2)(D).

#### a. *Fees*

"[T]he determination of a reasonable fee award under Section 1132(g)(2)(D) of ERISA lies within the sound discretion of the district judge." *Bourgal v. Lakewood Haulage Inc.*, 827 F.Supp. 126, 129 (E.D.N.Y.1993) (citations omitted); *see also Labarbera v. Andrew's Trucking Corp.*, No. 06–CV–6243 (NG)(JMA), 2007 WL 4224631, *4 (E.D.N.Y. Nov. 26, 2007) (citations omitted). A party seeking such an award must support its application by submitting contemporaneous time records that detail "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983).

■ The Second Circuit utilizes the "presumptively reasonable fee," known as the "lodestar figure"[7] in other circuits, to determine appropriate attorneys' fees for federal claims. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 484 F.3d 162 (2d Cir. Apr.24, 2007), *amended by* 493 F.3d 110 (2d Cir. July 12, 2007); *see also Diaz v. Paragon Motors of Woodside, Inc.*, No. CV–03–6466 (CPS)(RML), 2007 WL 2903920, at *2 (E.D.N.Y. Oct. 1, 2007). In calculating the "presumptively reasonable fee," the district court should look to what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay. *Arbor Hill*, 484 F.3d at 172.

■ The Court has considerable discretion in making the "presumptively reasonable fee" determination, which is comprised of a reasonable hourly rate multiplied by a reasonable number of expended hours.[8] *Arbor Hill*, 493 F.3d at 117–18; *Cement and Concrete Workers*

*Dist. Council Welfare Fund v. Azzarone*, No. 06–CV–2953(FB)(RML), 2007 WL 2712314, at *4 (E.D.N.Y. Sept. 13, 2007). The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged. *See generally, New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136. The Second Circuit has held that, in determining whether an attorney expended a reasonable number of hours, a district court must "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case" and "[i]f the court determines that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours in its calculation[.]" *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir.1998) (internal citations and quotations omitted). Hourly rates, likewise, are reasonable when they conform to those rates "prevailing in the community for similar ser-

**7.** The Second Circuit, in *Arbor Hill*, recently recommended abandoning the formerly-used "lodestar" term as an unhelpful term "whose time has come" in favor of "presumptively reasonable fee." *Arbor Hill*, 493 F.3d at 117 n. 4.

**8.** In making the "presumptively reasonable fee" determination, the Second Circuit suggests that the district court consider the following factors:

"[T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as

reputation, etc.) the attorney expected from the representation."
*Arbor Hill*, 493 F.3d at 112. The Second Circuit also suggests that the district court "bear in mind *all* [relevant] case-specific variables" and additionally consider the twelve factors delineated in *Johnson v. Ga. Highway Express*, 488 F.2d 714 (5th Cir.1974). *Id.* at 117–18. The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

vices by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

Plaintiff's counsel, Suzanne E. D'Amato, Esq., of Cohen, Weiss, and Simon, LLP, submitted an affidavit and contemporaneous time records in support of plaintiff's application for attorneys' fees and costs. Counsel sets forth a description of her firm's billing rates as follows: $225 per hour for partners, $200 per hour for associates, and $75 per hour for paralegals. (D'Amato Decl. ¶ 27 and Ex. F.) Applying the new *Arbor Hill* standard, I find that these rates are reasonable and appropriate. *See, e.g., Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.*, No. 07–CV–656 (FB)(KAM), 2007 WL 4324019, at *6 (E.D.N.Y. Dec. 7, 2007) (finding that the prevailing rates in this district have ranged from $200–$375 per hour for partners, $200–$250 per hour for senior associates, $100–$150 per hour for junior associates and $75 per hour for paralegals) (citations omitted).

■ Plaintiff requests an award of $8,375.00 for attorneys' fees. (D'Amato Decl. ¶ 27.) Counsel avers that a total of 91.4 hours were spent on this case. (*Id.*) After carefully scrutinizing plaintiffs' attorneys' time records, however, I find that the time expenditure for this case was unreasonable.

In making this determination, I considered the following factors: defendant is in default and this motion is undisputed; the activities of the case, as reflected by entries on the docket sheet, were simple and few; no novel or particularly difficult issues of law were implicated; and many entries in the billing records lacked sufficient detail. Also worth noting is that plaintiff's submissions, including the complaint and declarations in support of the default judgment, were largely boilerplate.

I find plaintiff's counsel's claim that an "inordinate expenditure of time" was necessitated by Omega's failure to submit payroll reports lacking in merit. (*See* D'Amato Decl. ¶ 29.) First, counsel admits that the Joint Board received all twelve weeks of payroll stubs for at least one employee. (D'Amato Decl. ¶ 30.) Second, Kevin Duffy makes clear in his declaration that the Joint Board regularly estimates contributions due for employees who are missing pay stubs based on pay stubs submitted by other employees staffed on the same project, stating "[i]n collection actions such as this one, it is the standard practice of the Joint Board to estimate contributions owed in this manner." (Duffy Decl. ¶ 24, n.4.) Furthermore, with one minor exception, all of five of the employees worked "the same number of hours per week and same weeks for the duration of the Righa Project," making the calculation of contributions more straightforward than counsel would have the Court believe. (*Id.* at ¶ 22.) Third, with the aid of a spreadsheet program, this Court has found that the interest calculations are hardly as time-consuming as counsel claims. Finally, counsel's own admissions that her firm is "engaged almost exclusively in the representation of labor unions and employee benefit plans" and has routinely worked on ERISA cases for the Joint Board further bolster my finding that the time expenditure for this case was excessive and unreasonable. (*See* D'Amato Decl. ¶ 30, 33.)

For these reasons, a reduction of 50% is appropriate. Accordingly, I recommend an award of attorneys' fees of $4,187.50 (reduced from $8,375.00).

**b. *Costs***

■ ERISA allows for the recoupment of costs. 29 U.S.C. § 1132(g) (2)(D).

166

Plaintiffs have provided documentation that their costs total $1,427.16, including $350.00 in filing fees, $175.00 in service fees, and $902.16 in "additional expenses." (*See* D'Amato Decl. ¶ 34 and Ex. F.) The "additional expenses" category includes at least $795.80 in "computer research expenses," which seems to include almost sixteen (16) hours of research on the potential personal liability of Omega's owner. (*Id.* at ¶ 31, Ex. F at 65, 80–81.) For the same reasons I delineated above, this is an unreasonable expenditure for a firm which specializes in ERISA cases, and a 50% reduction is appropriate. Accordingly, I recommend an award of $451.08 in "additional expenses" (reduced from $902.16). Together with the filing and service expenses, I respectfully recommend a total award for attorneys' costs of $976.08.

### III. *CONCLUSION*

For the foregoing reasons, I respectfully recommend that a judgment of $122,846.59 be entered against defendant. This awards reflects $117,683.01 in unpaid contributions, interest, and liquidated damages, and $5,163.58 in attorneys' fees and costs. The plaintiff is hereby ordered to serve a copy of this Report and Recommendation on defendant and to promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of the date of entry of this Report and Recommendation. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

SO ORDERED.