Thomas **GESAULDI**, Louis Bisignano, Anthony D'Aquila, Michael O'Toole, Benny Umbra, Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Denise Richardson, and Thomas F. Corbett as Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund, Plaintiffs,

v.

**DAN YANT INC.**, Defendant.

No. 13–CV–1872 (KAM)(RLM).

United States District Court, E.D. New York.

Signed March 19, 2014.

Jonathan Michael Bardavid, Trivella & Forte, LLP, White Plains, NY, for Plaintiffs.

## ORDER ADOPTING REPORT AND RECOMMENDATION

MATSUMOTO, District Judge:

On April 4, 2013, the trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (the "Funds") commenced this action against defendant Dan Yant Inc. (ECF No. 1, Complaint, 4/4/13.) Defendant was served with the Summons and Complaint on April 24, 2013. (ECF No. 23, Affidavit of Service, 3/12/14.) Plaintiffs alleged that defendant failed to make contributions to the Funds as required by a collective bargaining agreement, thereby violating Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145, as amended, and Section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185. (Id.)

The clerk of court entered a certificate of default against defendant on June 5, 2013, because it had failed to appear or otherwise defend this action after being served with process. (ECF No. 7, Clerk's Entry of Default, 6/5/13.) Plaintiff moved for entry of default judgment against defendant on July 26, 2013. (ECF No. 8, Notice of Motion for Default Judgment, 7/26/13.) On October 7, 2013, the court referred the motion for default judgment to Magistrate Judge Roanne L. Mann for a Report and Recommendation. (See Order Referring Motion, 10/7/13.) On February 18, 2014, Magistrate Judge Mann issued a Report and Recommendation (ECF No. 22, Report and Recommendation ("R & R"), 2/18/14), in which she recommended that plaintiffs be awarded judgment against defendant in the sum of $2,418.28 in unpaid contributions, $1,300.00 in audit fees, $3,313.64 in attorney's fees and costs, prejudgment interest to be calculated by the clerk of court upon entry of judgment for the time period from September 1, 2008 to the entry of judgment using the figures and formulas provided on pages 11–12 of the R & R, and liquidated damages in an amount equal to the amount of prejudgment interest. (Id. at 17.)

The R & R, which was mailed to defendant on February 27, 2014, notified the parties of the right to file written objections, pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). (Id.) The statutory period for filing objections has now expired, and no objections to Magistrate Judge Mann's R & R have been filed.

In reviewing a Report and Recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate." 28 U.S.C. § 636(b)(1)(C). Where no objection to the Report and Recommendation has been filed, the district court "need only satisfy itself that that there is no clear error on the face of the record." *Urena v. New York,* 160 F.Supp.2d 606, 609–10 (S.D.N.Y.2001) (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985) (citations omitted)).

Upon a review of the Report and Recommendation, and considering that the parties have failed to object to any of Magistrate Judge Mann's thorough and well-reasoned recommendations, the court finds no clear error in Magistrate Judge Mann's Report and Recommendation and hereby affirms and adopts the Report and Recommendation as the opinion of the court.

Accordingly, judgment should be entered for plaintiffs and against defendant Dan Yant Inc. as follows: $2,418.28 in unpaid contributions, $1,300.00 in audit fees, $3,313.64 in attorney's fees and costs, prejudgment interest from September 1, 2008 to the entry of judgment that is to be calculated upon entry of judgment by the clerk of court using the formulas and figures provided by Magistrate Judge Mann on pages 11–12 of the R & R, and liquidated damages in an amount equal to the amount of prejudgment interest. The clerk of court is further respectfully requested to mail a copy of the judgment and this Order to defendant, note service on the docket, and to close this case.

**SO ORDERED.**

### REPORT AND RECOMMENDATION

ROANNE L. MANN, United States Magistrate Judge:

This action was commenced on April 4, 2013, by the trustees ("plaintiffs") of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively, the "Funds") against defendant Dan Yant Inc. ("defendant"). *See* Complaint (Apr. 4, 2013) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") # 1. Plaintiffs contend that defendant failed to make contributions to the Funds as required by a collective bargaining agreement, thereby violating Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145, and Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. *See* Compl. ¶¶ 5, 10, 18–31. On July 26, 2013, plaintiffs moved for a default judgment. *See* Notice of Motion for Default Judgment (July 26, 2013) ("Notice of Motion"), DE # 8. The Honorable Kiyo A. Matsumoto referred this motion to the undersigned magistrate judge on October 7, 2013. *See* Order Referring Motion (Oct. 7, 2013).

For the reasons that follow, this Court respectfully recommends that plaintiffs' motion for default judgment be granted and that plaintiffs be awarded $2,418.28 in unpaid contributions, $1,300.00 in audit fees, $3,313.64 in attorney's fees and costs, and prejudgment interest in an amount to be calculated by the Clerk of the Court as specified below. Additionally, this Court respectfully recommends that plaintiffs be awarded liquidated damages in an amount equal to the calculated prejudgment interest.

### BACKGROUND

This case arises from an employer's alleged failure to make required contributions to the Funds. The employer is defendant Dan Yant Inc., a domestic corporation doing business in New York. *See* Declaration of Jonathan Bardavid in Support of Motion for Default Judgment (July 26, 2013) ("First Bardavid Decl.") ¶ 4, DE # 9. Defendant was a party to

a collective bargaining agreement, operative from July 1, 2008, to June 30, 2011, that obligated defendant to make contributions to the Funds on behalf of its employees. *See* Compl. ¶¶ 9–10; First Bardavid Decl. ¶ 10; Ex. D to First Bardavid Decl. at ECF pp. 3, 5, DE # 9–4 (the "CBA").[1] Defendant's specific obligations concerning Fund contributions were established in a trust agreement that was incorporated into the CBA. *See* Compl. ¶¶ 12–17; First Bardavid Decl. ¶ 12; Supplemental Declaration of Jonathan Bardavid (Dec. 9, 2013) ("Second Bardavid Decl.") ¶ 4, DE # 17; Ex. 1 to Second Bardavid Decl. at ECF pp. 4–74 (the "Trust Agreement").[2] Among other things, the Trust Agreement required defendant to submit to periodic audits to verify that defendant had made all required plan contributions. *See* Compl. ¶ 16; Declaration of Theresa Cody in Support of Default Judgment ("First Cody Decl.") ¶ 10, DE # 10; Trust Agreement at ECF pp. 31–34. In the event an audit revealed an underpayment of contributions, the Trust Agreement held employers liable for the amount of delinquent contributions, interest, liquidated damages, attorney's fees, and audit fees. *See* Compl. ¶ 13; Trust Agreement at ECF pp. 34–35.

Prior to bringing this action, the Funds retained the accounting firm Schultheis & Panettieri, LLP ("S & P") to audit defendant's records concerning contributions for the period from January 28, 2008, through July 31, 2010 (the "audit period"). First Cody Decl. ¶ 11. The audit, completed on September 28, 2010, revealed that defendant was delinquent in its contributions over numerous months within the audit period. *See* Compl. ¶¶ 18–19; First Cody Decl. ¶ 13. Accordingly, plaintiffs sent defendant several letters between November 18, 2010, and December 16, 2011, demanding payment of unpaid contributions, interest, and audit costs. *See* Exs. A, B, C, E to First Cody Decl., DE # 10–1, # 10–2, # 10–3, # 10–5. Defendant made a partial payment on or around September 27, 2012, but has not paid the remainder of its obligations to the Funds. *See* First Cody Decl. ¶¶ 21–22.

Plaintiffs filed suit on April 4, 2013. Defendant, though properly served, has neither answered nor otherwise appeared in this action. *See* Clerk's Entry of Default (June 5, 2013), DE # 7. After the Clerk of the Court noted defendant's default, *see id.*, plaintiffs moved for a default judgment on July 26, 2013, *see* Notice of Motion. In response to an order of this Court, *see* 11/21/13 Order, plaintiffs supplied the Court with additional information and documentation in support of plaintiffs' motion, *see generally* Second Bardavid Decl. Defendant, in contrast, has responded to none of plaintiffs' submissions, although directed to do so. *See* Order re Motion for Default Judgment (Oct. 8, 2013), DE # 13; 11/21/13 Order.

Plaintiffs' counsel attests that no part of the judgment sought has been paid, and

---

**1.** This Court cites ECF-assigned page numbers where docket entries do not otherwise include continuously numbered pages.

**2.** Plaintiffs' original submissions accompanying their July 26, 2013 motion for default judgment included a trust document that plaintiffs alleged governed this case, but that did not, in fact, become operative until after the time period at issue here. *See* Order to Show Cause (Nov. 21, 2013) ("11/21/13 Order") at 2, DE # 14. At this Court's direction, plaintiffs subsequently submitted what appears to be the applicable trust agreement. *See* Second Bardavid Decl. ¶ 4; Trust Agreement. While it is true that the relevant provisions of the Trust Agreement and the previously submitted document appear to be identical, plaintiffs, in moving for default judgment, should nevertheless have furnished the Court with the operative document, rather than one from a later period.

that plaintiffs have made no prior request for the relief sought here before any court. *See* First Bardavid Decl. ¶¶ 31–32.

## DISCUSSION

■ After the Clerk of the District Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action. Fed.R.Civ.P. 55(a)-(b); *see also* S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(b). A party's default admits all well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 108 (2d Cir. 1997). An admission of liability does not, however, admit damages; the plaintiff bears the burden of proving damages, and the defendant must be given the opportunity to contest the amount. *See Greyhound,* 973 F.2d at 158. Where, as here, the defendant has never appeared, "the Court's determination is based solely on plaintiff[s'] submissions." *Gilbert v. Hotline Delivery,* No. 00–CV–0160 (MBM)(RLE), 2001 WL 799576, at *2 (S.D.N.Y. July 10, 2011). It is within the Court's discretion to determine whether plaintiffs' burden has been met, and whether or not to hold an evidentiary hearing. *See Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir.1989).

## I. LIABILITY

Section 515 of ERISA mandates that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained

agreement shall … make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see also, e.g., Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.,* No. 08–CV–4563 (FB)(SMG), 2010 WL 827901, at *2 (E.D.N.Y. Mar. 4, 2010). Plan fiduciaries may bring civil actions to enforce the provisions of the collectively bargained agreement and obtain equitable relief. *See* 29 U.S.C. § 1132(a)(3); *New York State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc.,* 382 F.3d 272, 278 (2d Cir.2004); *Labarbera v. Andrew's Trucking Corp.,* No. 06 CV 6243(NG)(JMA), 2007 WL 4224631, at *3 (E.D.N.Y. Nov. 26, 2007) (hereinafter, *"Andrew's Trucking"*).

■ Plaintiffs' unanswered complaint establishes defendant's liability under ERISA. Plaintiffs are plan fiduciaries as defined by Section 3(21) of ERISA, 29 U.S.C. § 1002(21)(A), *see* Compl. ¶ 3; First Bardavid Decl. ¶ 5, and defendant is an "employer" within the meaning of Section 3(5), 29 U.S.C. § 1002(5), *see* Compl. ¶ 8. Furthermore, the Funds are "employee benefit plans" and "multiemployer plans" within the respective meanings of Section 3(3), 29 U.S.C. § 1002(3), and Section 3(37), 29 U.S.C. § 1002(37). *See* Compl. ¶ 4. Finally, the CBA and Trust Agreement are plan documents for purposes of Section 502, 29 U.S.C. § 1132(a)(3). *See* Compl. ¶ 7. Since plaintiffs allege that defendant has failed to make contributions to the Funds in violation of the CBA and Trust Agreement, *see* Compl. ¶¶ 18–22, this Court respectfully recommends that a default judgment under ERISA be entered against defendant in the amounts discussed below.[3]

---

**3.** The complaint also pled a claim under Section 301 of the LMRA, *see* Compl. ¶¶ 28–31, which provides a federal cause of action "for violation of contracts between an employer

and a labor organization," 29 U.S.C. § 185(a). Since the relief requested by plaintiffs under the LMRA is also available under

## II. DAMAGES

Having found liability, this Court next considers plaintiffs' entitlement to damages. Although defendant, by defaulting, admits all well-pleaded allegations pertaining to liability, plaintiffs must provide evidence to substantiate their request for damages; it is within the Court's discretion to determine whether that burden has been met. *See, e.g., Greyhound,* 973 F.2d at 158. Under ·ERISA, plaintiffs are entitled to an award· of: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorney's fees and costs; and (5) other legal and equitable relief as the court deems appropriate. *See* 29 U.S.C. § 1132(g)(2); *Andrew's Trucking,* 2007 WL 4224631, at *3. The Trust Agreement prescribes similar remedies, including audit costs incurred in connection with a collection action.. *See* Trust Agreement at ECF pp. 34–35, 57, 63. Here, plaintiffs requested a total award in excess of $14,696.34 in unpaid contributions, interest, liquidated damages, audit fees, and attorney's fees and costs. *See* Plaintiffs' Memorandum of Law in Support of Motion for Default Judgment ("Pl. Mem.") at 8, DE # 12. The Court addresses each category of requested damages below.

### A. Delinquent Contributions

Plaintiffs seek a total of $4,852.84 in unpaid contributions. *See* Pl. Mem. at 4. Plaintiffs' starting point in generating this figure is S & P's audit report, which indicated that defendant failed to remit $6,158.72 in owed ·contributions over a range of months between January 28, 2008 and July 31, 2010. *See* Declaration of Angelos Poulos in Support of Motion for Default Judgment (July 26, 2013) ("First Poulos Decl.") ¶¶ 6, 19, DE # 11; Ex. 1 to First Poulos Decl., DE 11–1.[4] This figure was reduced to $4,852.84 because defendant made a partial payment of $1,305.88 on or around September 27, 2012. *See* First Cody Decl. ¶ 21.

This Court has identified one problem with plaintiffs' calculations. S & P's audit, in addition to revealing the delinquent amount noted above, identified $2,434.56 in prior overpayments by defendant. First Cody Decl. ¶ 13; First Poulos Decl. ¶ 19. Plaintiffs' submissions show that plaintiffs not only were aware of the overpayment, but that they assumed that defendant was entitled to a credit for this amount. This assumption is apparent in a letter plaintiffs sent defendant around November 18, 2010, demanding payment of delinquent contributions and interest. *See* First Cody Decl. ¶ 14; Ex. A to First Cody Decl. (the "November 18, 2010 Letter"), DE # 10–1. Although plaintiffs' letter demanded an amount of interest that appears to have been calculated without taking the prior overpayments into account, the demand for unpaid contributions was limited to $3,724.16, an amount derived from crediting· the overpayments against the unpaid contributions. *See* First Cody Decl. ¶ 13; November 18, 2010 Letter; Ex. 1 to First Poulos Decl. at ECF pp. 15–16.

After receiving no response to additional demand letters on March 11, 2011, and April 28, 2011, *see* First Cody Decl. ¶¶ 15– 16; Exs. B, C to First Cody Decl., DE # 10–2, # 10–3, plaintiffs apparently reconsidered their position concerning the overpayment. The Funds purportedly ad-

---

ERISA, the Court need not address liability and damages under the LMRA. *See generally Indu Craft, Inc. v. Bank of Baroda,* 47 F.3d 490, 497 (2d Cir.1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery.").

4. Mr. Poulos' declaration erroneously refers to "Exhibit A" instead of the attached "Exhibit 1." *See* First Poulos Decl. ¶ 6.

justed S & P's audit, removing the credit for $2,434.56 in overpayments. *See* First Cody Decl. ¶¶ 13, 19. Upon filing its motion for default judgment, plaintiffs initially argued that this adjustment was proper because defendant failed to invoke mandatory procedures for a return of overpayments. *See* Pl. Mem. at 2; First Cody Decl. ¶¶ 17–19. These procedures are laid out in an express policy included with plaintiffs' submissions, of which defendant purportedly had notice. *See* First Cody Decl. ¶ 17; Ex. D to First Cody Decl., DE # 10–4. Accordingly, plaintiffs requested the adjusted amount from the Court. *See* Pl. Mem. at 4.

After reviewing plaintiffs' original motion papers, the Court ordered the parties to submit supplemental briefing on whether, in light of the credit applied in the November 18, 2010 Letter, defendant is entitled to the same credit in the Court's calculation of damages. *See* 11/21/13 Order at 4. In response, plaintiffs wrote, "in light of the November 18, 2010 letter, Plaintiffs will not challenge the Court's decision to credit the overpayments against any amounts due." Second Bardavid Decl. ¶ 5. The Court interprets plaintiffs' statement as conceding that defendant is now entitled to the credit.

Accepting plaintiffs' concession, this Court respectfully recommends that plaintiffs be awarded $2,418.28 in delinquent contributions. This recommendation relies on S & P's calculation of $6,158.72 as the total amount of unpaid contributions, the accuracy of which this Court has found no reason to doubt. To arrive at the final award for unpaid contributions, this Court has reduced that figure, first, by $2,434.56 for defendant's prior overpayments, and, second, by $1,305.88 for defendant's subsequent partial payment.

**B. Interest on Delinquent Contributions**

Under ERISA, where an employer fails to remit required contributions to a plan, the plan is entitled to interest on the unpaid contributions, calculated at the rate stated in the plan or, if unstated, the rate prescribed in 26 U.S.C. § 6621. *See* 29 U.S.C. § 1132(g); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F.Supp.2d 156, 161 (E.D.N.Y.2008). In this case, the Trust Agreement provides that an employer who fails to pay required contributions when due shall be liable for interest at a rate of one-and-one-half (1–1 /2) percent per month, or eighteen (18) percent per year, from the first day of the month in which payment is due to the date payment is made. *See* First Bardavid Decl. ¶ 18; Trust Agreement at ECF pp. 34, 63. Applying the accrual method specified in the Trust Agreement, plaintiffs provided interest calculations up to the date July 25, 2013, and a formula for calculating additional interest going forward until judgment is entered. *See* First Bardavid Decl. ¶¶ 19–22; First Cody Decl. ¶¶ 23–25; Ex. E to First Cody Decl. at ECF pp. 15–16. Plaintiffs' basic method for calculating interest for a given date range was to (1) take 18 percent of the delinquency for each month, (2) divide by 365 to determine a daily interest amount, and (3) multiply the daily interest amount by the number of days on which interest accrued. *See* First Cody Decl. ¶ 24.

Although plaintiffs' calculations otherwise appear sound, they do not account for a reduction in the amount of unpaid contributions as a result of defendant's prior overpayments. *See, e.g.*, Ex. E to First Cody Decl. at ECF pp. 15–16; Ex. 1 to First Poulos Decl. at ECF pp. 15–16. Since plaintiffs no longer dispute that defendant should be given the benefit of prior overpayments, the interest calculations should reflect this adjustment to the

principal due. Accordingly, the Court must decide the date on which the credit became effective for purposes of interest calculations.

This Court concludes that the credit should be deemed given on November 18, 2010, and that the interest calculations should be adjusted accordingly. This conclusion takes into account two considerations. First, November 18, 2010, was the date on which plaintiffs gave defendant notice of the completed audit report and, at least implicitly, defendant's entitlement to a credit. *See* November 18, 2010 Letter. Second, there is no evidence that defendant was entitled to an offset of overpayments against delinquencies prior to November 18, 2010; in fact, the return policy provided by plaintiffs could arguably be construed to establish the contrary. *See* Ex. D to First Cody Decl. Taking into account the November 18, 2010 credit, this Court finds that interest should be calculated in accordance with the table and explanations below.

| Interest Period | Dates Covered | Interest Calculations |
|---|---|---|
| 1. | September 1, 2008— September 28, 2010 | (Calculated by plaintiffs) Subtotal: $1,829.97 |
| 2. | September 28, 2010— November 18, 2010 | Principal: $6,158.72 Formula: $6,158.72 \times 0.18 / 365 \times 51$ Subtotal: $154.90 |
| 3. | November 18, 2010— September 27, 2012 | Principal: $3,724.16 Formula: $3,724.16 \times 0.18 / 365 \times 679$ Subtotal: $1,247.03 |
| 4. | September 27, 2012— Entry of Judgment | Principal: $2,418.28 Formula: $2,418.28 \times 0.18 / 365 \times$ # days Subtotal: To be calculated by Clerk. |

Period 1 spans September 1, 2008 (the date from which interest first accrued) to September 28, 2010 (the last date to be included in S & P's interest calculations). *See* Ex. 1 to First Poulos Decl. at ECF pp. 15–16. The amount of interest due for Period 1 ($1,829.87) is derived from plaintiffs' audit report, *see id.* at ECF pp. 2–3, and the accompanying worksheets, *see id.* at ECF pp. 15–16. Since the Court has determined that defendant's prior overpayments need not be credited to defendant until November 18, 2010, the Court accepts plaintiffs' interest calculations for Period 1, which ignore defendant's prior overpayments.

Period 2 covers 51 days from September 28, 2010, to November 18, 2010. Plaintiffs' calculation of interest for that date range does not take into account the reduction in the principal amount as of November 18, 2010. Applying plaintiffs' formula for calculating interest to the reduced principal, this Court has determined the amount of interest due for Period 2 to be $154.90.

Period 3 covers 679 days from November 18, 2010 (the date from which interest accrued on a principal of $3,724.16, reduced because of defendant's prior overpayment) to September 27, 2012 (the date on which defendant made a partial payment in the amount of $1,305.88). The amount of interest due for Period 3 is $1,247.03.

Period 4 spans September 27, 2012 (the first date on which interest accrued on the reduced principal of $2,418.28) to entry of judgment. Interest due for Period 4 should be calculated by the Clerk of the Court. *See, e.g., Laundry, Dry Cleaning*

*Workers & Allied Indus. Health Fund, Unite Here! v. Jung Sun Laundry Grp. Corp.,* No. 08–CV–2771 (DLI)(RLM), 2009 WL 704723, at *6 (E.D.N.Y. Mar. 16, 2009) (awarding plaintiffs prejudgment interest through entry of final judgment, as calculated by the Clerk).

This Court respectfully recommends that plaintiffs be awarded interest in the sum of the four subtotals in the table above, calculated by the Clerk of the Court upon entry of judgment.

### C. Liquidated Damages

ERISA provides for liquidated damages constituting the greater of (1) the amount of interest due on unpaid contributions or (2) an amount provided in the plan that may not exceed twenty percent of the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(C); *LaBarbera v. David Liepper & Sons, Inc.,* No. CV–06–1371(DLI) (JMA), 2006 WL 2423420, at *4 (E.D.N.Y. July 6, 2006). In the instant case, the first measure clearly yields the greater amount. Therefore, this Court respectfully recommends that plaintiffs be awarded liquidated damages equal to the amount of prejudgment interest, as calculated by the Clerk of the Court.

### D. Attorney's Fees and Costs

ERISA provides for an award of attorney's fees and costs where plaintiffs obtain a favorable judgment under Section 515. *See* 29 U.S.C. § 1132(g)(2)(D). Additionally, the Trust Agreement specifically provides for an award of audit fees. *See* First Bardavid Decl. ¶ 24; Trust Agreement at ECF pp. 34, 57. Such audit fees are recoverable under ERISA. *See, e.g., La Barbera v. Tadco Constr. Corp.,* 647 F.Supp.2d 247, 254 (E.D.N.Y.2009) (hereinafter, *"Tadco Constr."*). Here, plaintiffs claim attorney's fees, audit fees, and other litigation-related costs. *See* Pl. Mem. at 6–8. The Court addresses each category below.

### 1. Attorney's fees

"In determining the sum due to plaintiffs' attorneys in fees and costs, the Court looks to what a reasonable client would be willing to pay to determine the 'presumptively reasonable fee.'" *Masino v. Columbus Constr. Corp.,* No. 08–CV–1592 (RRM)(CLP), 2009 WL 2566956, at *6 (E.D.N.Y. Aug. 19, 2009) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 183–84 (2d Cir.2008)). To calculate the presumptively reasonable fee, "a court must first determine a reasonable hourly rate for the legal services performed[,]" using factors such as the labor and skill required, the difficulty of the legal questions, the attorney's customary hourly rate, the amount at stake, and awards in similar cases. *Id.* (quoting *Arbor Hill,* 522 F.3d at 186 n. 3, and listing twelve factors). Under the so-called "forum rule," a court reviewing the reasonableness of attorney's fees should generally consider the hourly rates charged in the district in which the court sits. *See Simmons v. N.Y. City Transit Auth.,* 575 F.3d 170, 174–76 (2d Cir.2009). Once the Court determines the reasonable hourly rate, it will then multiply that rate by the reasonable number of hours expended, to arrive at the presumptively reasonable fee. *See Arbor Hill,* 522 F.3d at 190.

#### a. Hourly Rates

Plaintiffs seek to collect $2,752.50 in attorney's fees for work performed by attorney Jonathan Bardavid and paralegal Michelle Salerno, as well as some "oversight" work by attorney Christopher Smith. *See* Pl. Mem. at 7; First Bardavid Decl. ¶ 25. The hourly rates charged by Mr. Bardavid and Mr. Smith were $250 and $275, respectively. *See* First Bardavid Decl. ¶ 26. Mr. Bardavid is a 2003 graduate of St. Johns University School of

Law, and he has almost a decade of experience in labor and employment practice. *See id.* ¶ 29. Mr. Smith has represented employee benefit plans since 1992 and has experience in more than 100 federal employee benefit cases. *See id.* The rates charged by these attorneys are reasonable, given past awards in similar cases in this district. *See, e.g., Fawzy v. Gendy,* No. 12 cv 5580(BMC), 2013 WL 5537128, at *1 (E.D.N.Y. Oct. 6, 2013) (collecting recent FLSA cases awarding fees); *Trs. of Local 807 Labor–Mgmt. Pension Fund v. Maritime Fish Prods., Inc.,* No. 11 CV 844 ENV, 2012 WL 2609321, at *17 (E.D.N.Y. May 31, 2012), *adopted by* 2012 WL 2674667 (E.D.N.Y. July 5, 2012).

■ For paralegal work by Michelle Salerno, plaintiffs billed $100 per hour. *See* First Bardavid Decl. ¶ 26. Various courts in this district have approved this rate for paralegal services. *See, e.g., Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation & Scholarship Funds v. A–Plus Flooring, Inc.,* No. CV–10–1634 (JS)(AKT), 2011 WL 4407447, at *7 (E.D.N.Y. Aug. 26, 2011), *adopted by* 2011 WL 4407431 (E.D.N.Y. Sep. 29, 2011); *Concrete Flotation Sys., Inc. v. Tadco Constr. Corp.,* No. 07–CV–319 (ARR)(VVP), 2010 WL 2539771, at *8 (E.D.N.Y. Mar. 15, 2010), *adopted by* 2010 WL 2539661 (E.D.N.Y. June 17, 2010). This Court finds $100 per hour to be a reasonable rate for Ms. Salerno's work on this case.

### b. Hours Billed

Attached to Mr. Bardavid's first declaration is a time-sheet summarizing the legal work performed by plaintiffs' law firm, billed in six-minute increments. *See* Ex. F to First Bardavid Decl. at 1–2, DE # 9–6.

Plaintiffs' counsel billed 0.2 hours of Mr. Smith's, 1.35 hours of Ms. Salerno's, and 10.25 hours of Mr. Bardavid's time, or 11.8 hours in total. *See id.* The Court has reviewed the time-sheet and concludes that the time spent on each listed task was not unreasonable. *See generally id.* Moreover, the aggregate fee requested is comparable to that found reasonable in similar cases in this district. *See, e.g., Gesualdi v. Giacomelli Tile Inc.,* No. CV10–4841 (ADS)(WDW), 2011 WL 4352548, at *4 (E.D.N.Y. Aug. 18, 2011), *adopted by* 2011 WL 4356157 (E.D.N.Y. Sept. 16, 2011); *Ferrara v. Corona & Son Trucking, Inc.,* No. 09CV5352 (SLT) (ALC), 2010 WL 5490918, at *4 (E.D.N.Y. Oct. 27, 2010), *adopted by* 2011 WL 63607 (E.D.N.Y. Jan. 6, 2011). Therefore, the Court finds the hours billed in this case reasonable, and respectfully recommends that plaintiffs be awarded the requested $2,752.50 in attorney's fees.

### 2. Accounting Costs

■ Plaintiffs seek $1,300.00 in accounting costs, which a representative of S & P has confirmed as the fee charged to the Funds in connection with this matter. *See* First Poulos Decl. ¶ 21; Ex. 1 to First Poulos Decl. at ECF p. 3.[5] Prevailing plaintiffs in ERISA cases may recover reasonable audit costs, provided those costs are properly documented. *See Trs. of the Mosaic & Terrazzo Welfare, Pension, Annuity & Vacation Funds. v. RPT New York L.L.C.,* No. 12–CV–03875 (CBA)(MDG), 2013 WL 5460292, at *8 (E.D.N.Y. Sept. 30, 2013). According to documentation provided in this case by the S & P representative, the $1,300.00 auditing fee incurred by plaintiffs is primarily based on $1,230 in charges for 16.50 hours of work, 14.0 of which were billed at $70

---

5. Plaintiffs' memorandum in support of their motion for default judgment claims $1,350 in audit fees, *see* Pl. Mem. at 6, but, in light of plaintiffs' supporting documents, this Court infers the $1,350 to be a typographical error.

per hour and 2.5 of which were billed at $100 per hour. *See* Supplemental Declaration of Angelos Poulos (Dec. 19, 2013) ("Second Poulos Decl.") ¶ 6, DE # 19; Ex. 1 to Second Poulos Decl. The remaining $70 is for "administrative work necessary to process the audit." Second Poulos Decl. ¶ 6. The Court finds the audit costs claimed here, supported by documentation, to be reasonable. *Compare Tadco Constr.*, 647 F.Supp.2d at 254 (awarding audit cost of $797.50). Therefore, this Court respectfully recommends awarding plaintiffs audit fees in the amount of $1,300.00.

### 3. Other Costs

 In addition to attorney's fees and audit costs, plaintiffs claim $561.14 in costs incurred to prosecute this action. *See* Pl. Mem. at 8; Ex. F to First Bardavid Decl. at ECF p. 4. Most of these costs were incurred in filing the summons and complaint, *see* Ex. F to Bardavid Decl. at ECF p. 4. This Court finds these costs reasonable, *see Trs. of Local 813 Ins. Trust Fund v. Bradley Funeral Serv., Inc.*, No. 11–CV–2885 (ARR)(RLM), 2012 WL 3871759, at *7 (E.D.N.Y. Aug. 10, 2012), and respectfully recommends including the requested amount in plaintiffs' award.

### CONCLUSION

For the foregoing reasons, this Court recommends that plaintiffs be awarded judgment against defendant in the sum of $2,418.28 in unpaid contributions, $1,300.00 in audit fees, $3,313.64 in attorney's fees and costs, and prejudgment interest to be calculated by the Clerk of the Court, as recommended above, upon entry of judgment. Additionally, plaintiffs should be awarded liquidated damages in an amount equal to the amount of prejudgment interest.

Any objections to the recommendations contained herein must be filed with Judge Matsumoto on or before March 7, 2014. Failure to file objections in a timely manner may waive a right to appeal the District Court order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

The Clerk is directed to enter this Report and Recommendation into the ECF System and to transmit a copy by Federal Express to defendant at the following two addresses: Dan Yant Inc. c/o Daniel Nyante, 90 Livingston Street, Suite 2, Brooklyn, NY 11201; Dan Yant Inc., 739 Fulton Street, Brooklyn, NY 11207.

**SO ORDERED.**

Dated: Brooklyn, New York, February 18, 2014.