Filed Dec. 12, 2014.

**Thomas GESUALDI, Louis Bisignano, Anthony D'Aquila, Michael O'Toole, Benny Umbra, Frank H. Finkel, Joseph A. Ferrara, Sr., Marc Herbst, Denise Richardson, and Thomas Corbett as Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund, Plaintiffs,**

v.

**SEACOAST PETROLEUM PRODUCTS, INC., Defendant.**

No. 14–cv–1938 (ADS)(SIL).

United States District Court, E.D. New York.

Signed March 28, 2015.

Filed March 30, 2015.

Trivella & Forte LLP, by: Jael Dumornay, Esq., James Robert Grisi, Esq., of Counsel, White Plains, NY, for the Plaintiffs.

No Appearance for the Defendant.

## ADOPTION ORDER

SPATT, District Judge.

On March 26, 2014, the Plaintiffs the Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, Pension Trust Fund, Annuity Trust Fund, Job Training Trust Fund, and Vacation and Sick Leave Trust Fund (the "Funds") commenced this action to collect unpaid liabilities and contributions determined to be due and owing to the Funds as a result of two audits of the Defendant Seacoast Petroleum Products,

Inc. (the "Defendant") conducted by the Funds.

On June 25, 2014, the Clerk of the Court noted the default of the Defendant. On October 3, 2014, the Funds moved for a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). On October 6, 2014, this Court referred the matter to United States Magistrate Judge Steven I. Locke for a recommendation as to whether the motion for a default judgment should be granted, and if so, whether damages should be awarded, including reasonable attorneys' fees and costs.

On March 3, 2015, Judge Locke issued a 39–page Report recommending that the motion for a default judgment be granted and that damages be awarded as follows:

| | |
|---|---:|
| Unpaid Contributions | $41,347.41 |
| Interest on Unpaid Contributions Calculated Through 10/03/14 | $38,856.51 |
| Liquidated Damages on Unpaid Contributions Calculated Through 10/03/14 | $38,856.51 |
| Audit Fees | $2,642.00 |
| Outstanding Withdrawal Liability | $19,711.00 |
| Interest on Outstanding Withdrawal Liability Calculated Through | $4,160.16 |
| Liquidated Damages on Withdrawal Liability Calculated Through | $4,160.16 |
| Attorneys' Fees | $6,577.65 |
| Costs + | $587.34 |
| | $156,898.74 |
| Daily Interest on Unpaid Contributions From 10/03/14 Through Entry of Judgment + | $20.39/day |
| Continued Accrual of Liquidated Damages on Unpaid Contributions From 10/03/14 Through Entry of Judgment + | $20.39/day |
| Daily Interest on Outstanding Withdrawal Liability From 10/03/14 Through Entry of Judgment + | $9.72/day |
| Continued Accrual of Liquidated Damages on Outstanding Withdrawal Liability From 10/03/14 Through Entry of Judgment + | $9.72/day |

More than fourteen days have elapsed since service of the Report and Recommendation on the Defendant, which has failed to file an objection.

Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72, this Court has reviewed the March 3, 2015 Report and Recommendation for clear error, and finding none, now concurs in both its reasoning and its result.

Accordingly, the March 3, 2015 Report and Recommendation is adopted in its entirety, and the Fund's motion for a default judgment is granted. The Clerk of the Court is respectfully directed to enter judgment in favor of the Funds as follows and to close the case:

| | |
|---|---:|
| Unpaid Contributions | $41,347.41 |
| Interest on Unpaid Contributions Calculated Through 10/03/14 | $38,856.51 |
| Liquidated Damages on Unpaid Contributions Calculated Through 10/03/14 | $38,856.51 |
| Audit Fees | $2,642.00 |
| Outstanding Withdrawal Liability | $19,711.00 |
| Interest on Outstanding Withdrawal Liability Calculated Through | $4,160.16 |

| | | |
|---|---|---|
| Liquidated Damages on Withdrawal Liability Calculated Through | | $4,160.16 |
| Attorneys' Fees | | $6,577.65 |
| Costs | + | $587.34 |
| | | $156,898.74 |
| Daily Interest on Unpaid Contributions From 10/03/14 Through Entry of Judgment | + | $20.39/day |
| Continued Accrual of Liquidated Damages on Unpaid Contributions From 10/03/14 Through Entry of Judgment | + | $20.39/day |
| Daily Interest on Outstanding Withdrawal Liability From 10/03/14 Through Entry of Judgment | + | $9.72/day |
| Continued Accrual of Liquidated Damages on Outstanding Withdrawal Liability From 10/03/14 Through Entry of Judgment | + | $9.72/day |

**SO ORDERED.**

## REPORT AND RECOMMENDATION

LOCKE, United States Magistrate Judge.

Before the Court on referral from the Honorable Arthur D. Spatt for Report and Recommendation in this action brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, is Plaintiffs' motion for a default judgment. By Complaint filed on March 26, 2014 ("Compl."), DE [1], Plaintiffs Thomas Gesualdi, Louis Bisignano, Anthony D'Aquila, Michael O'Toole, Benny Umbra, Frank H. Finkel, Joseph A. Ferrara, Sr., Marc Herbst, Denise Richardson and Thomas Corbett, as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, Pension Trust Fund, Annuity Trust Fund, Job Training Fund, and Vacation and Sick Leave Trust Fund (collectively, the "Plaintiffs" or "Funds") commenced this action against Defendant Seacoast Petroleum Products, Inc. ("Defendant" or "Seacoast") to recover unpaid benefit contributions, withdrawal liability, and related relief. Seacoast failed to answer or other-wise respond, and on October 3, 2014 Plaintiffs filed their motion for a default judgment, DE [11], seeking a total amount of $183,582.90 for: unpaid withdrawal liability; unpaid benefit contributions; accrued prejudgment interest on both sums, plus daily interest through the date of judgment; additional liquidated damages on both sums, plus daily liquidated damages through the date of judgment; audit fees; attorneys' fees; and costs of the action. *See* Declaration of Jael Dumornay, dated September 30, 2014 ("Dumornay Decl.") at ¶ 32. By Order dated October 6, 2014, Judge Spatt, DE [18], referred the motion to the undersigned for a Report and Recommendation "as to whether the motion for a default judgment should be granted and, if so, whether damages should be awarded, including reasonable attorney's fees and costs."

For the reasons set forth below, my recommendation is that the motion be granted and that total damages of $156,898.74 be awarded.

## I. *Background*

Unless otherwise noted, the following facts are drawn from the Complaint and accepted as true for the purposes of this motion. Plaintiffs are jointly administered "employee benefit plans" and "multiemployer plans," within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. § 1002(3) & (7), and formed pursuant to the terms of various collective bargaining agreements. *See* Compl. ¶ 4. Plaintiffs and Seacoast were both parties to the Nassau/Suffolk Heavy Construction & Excavating and Asphalt Industry Contract effective through June 30, 2008 (the "2008 CBA"). "[B]y its course of conduct in

continuing to submit remittance reports and to pay contributions at the rates then in effect, as well as continuing to submit its pertinent books and records to the Funds' auditors upon request, Seacoast evidenced its intent to continue to be bound by the" CBA for the period July 1, 2008 to June 30, 2011 (the "2011 CBA", together with the 2008 CBA, the "CBAs"). *See id.* ¶ 8; *see also* Declaration of Theresa Cody, sworn to on September 30, 2014 (the "Cody Decl.") at Ex. B & C (CBAs). The CBAs incorporated by reference an Amended and Restated Agreement and Declaration of Trust (the "Trust Agreement"). *See* Cody Decl. Ex. A (Trust Agreement).

Pursuant to the terms of the CBAs, Seacoast was obligated to submit timely remittance reports stating which employees performed covered work and for how many hours, and make timely contributions to the Funds on behalf of its covered employees. *See* Compl. ¶¶ 11–12; *see generally* Trust Agmt. Art. IX. The CBAs also require Seacoast to periodically submit its books and records to an audit "in order to verify that all contributions required under the CBAs have been remitted to the Funds, that such contributions have been made solely on behalf of individuals eligible to participate in the Funds, and that covered workers are receiving the required benefits and/or credits." Compl. ¶ 16; *see* Trust Agmt. Art. IX § 1(d) (providing that "The Trustees may at any time audit the pertinent books and records of any Employer in connection with" the collection of benefit contributions).

### A. Seacoast's Unpaid Benefit Contributions

Plaintiffs performed an audit of Seacoast's books and records for the period April 26, 2008 through June 21, 2009 ("Audit 10–0357"). *See id.* ¶ 32. Plaintiffs provide an affidavit from Ken Jones, an accounting supervisor at Wagner & Zwerman LLP ("W & Z"), the accounting firm engaged to perform Audit 10–0357, who "examined the documents related to Seacoast, supervised the work of the other W & Z accountants on [the audit], and oversaw the preparation of the examination report of [their] findings," which is submitted as Exhibit A thereto. *See* Jones Decl. ¶¶ 2, 10–11. That audit revealed delinquent contributions totaling $12,950.83, plus interest. *See* Compl. ¶ 33; *see also* Jones Decl. ¶ 15. Consequently, the Funds sent Seacoast a letter on or about December 2, 2009, notifying Seacoast of its delinquent contributions for that period, and demanding payment thereof, together with the cost of the audit. *See id.; see also* Cody Decl. Ex. E (Dec. 2, 2009 Letter). The Funds sent additional letters demanding payment on December 6, 2010 and March 7, 2011. *See* Compl. ¶ 33; *see also* Cody Decl. Ex. F (Dec. 6, 2010 Letter) & Ex. G (Mar. 7, 2011 Letter). To date, the amounts revealed by Audit 10–0357 remain outstanding. *See* Compl. ¶ 33; Cody Decl. ¶ 31.

It appears that prior to the dates covered by Audit 10–0357, when Seacoast was still contributing to the Funds, it overpaid its contribution obligations by $670.49. *See* Compl. ¶ 34. Consequently, a credit for that amount was originally reflected in Audit 10–0357. *See id.* However, Plaintiffs' "Amended Policy for the Return to Employers of Overpaid Contributions," provides, in pertinent part, that an employer waives its right to a refund of any overpaid amounts if it failed to request one within 120 days of the Funds' discovery of the overpayment. *See* Cody Decl. Ex. H at § II(9). Plaintiffs claim that 120 days elapsed from the date Plaintiffs provided a copy of Audit 10–0357 to Seacoast, and no request for a refund of the $670.49 was made. *See id.* ¶¶ 34–35. Accordingly, an adjusted audit was later prepared ("Audit 10–0357–A1") to reflect the removal of the

credit. *See* Compl. ¶ 34; *see also* Cody Decl. Ex. I. The adjusted amount of delinquent contributions for the period covered by Audit 10–0357–A1 is $13,621.32, plus interest. *See* Compl. ¶ 34; *see* Cody Decl. ¶ 36.

Plaintiffs also performed an audit of Seacoast's books and records for the period June 22, 2009 through July 25, 2010 ("Audit 11–0615"). *See* Compl. ¶ 35. Plaintiffs provide an affidavit from Angelos Poulos, a payroll audit supervisor at Schultheis & Panettieri LLP ("S & P"), the accounting firm engaged to perform Audit 11–0615, who "supervised the work of other S & P personnel on [the audit], and oversaw the preparation of the report of [their] findings," which is submitted as Exhibit A thereto. *See* Poulos Decl. ¶¶ 2, 9. That audit revealed delinquent contributions totaling $27,725.58, plus interest. *See* Compl. ¶ 36; *see also* Poulos Decl. ¶¶ 15–16. Consequently, the Funds sent Seacoast a letter on or about June 10, 2011, notifying Seacoast of its delinquent contributions for that period, and demanding payment thereof, together with the cost of the audit. *See id.; see also* Cody Decl. Ex. J (June 10, 2011 Letter). The Funds sent additional letters demanding payment on August 18, 2011 and September 21, 2011. *See* Compl. ¶ 36; *see also* Cody Decl. Ex. K (Aug. 18, 2011 Letter) & L (Sept. 21, 2011 Letter). To date, the amounts revealed by Audit 11–0615 remain outstanding. *See* Compl. ¶ 36; *see also* Cody Decl. ¶ 41.

### B. Seacoast's Withdrawal from the Funds

As of November 2009, Plaintiffs determined that Seacoast had effectuated a "complete withdrawal" from the Funds, within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a), and "ceased to have an obligation to remit contributions" under the CBAs. Compl. ¶ 23. As explained in the affidavit of Thomas J. Ryan (the "Ryan Decl."), the Funds' Administrator, the withdrawal was determined as a result of Seacoast failing to contribute to the Funds on behalf of its employees who performed covered work after November 2009. *See* Ryan Decl. ¶ 15. Consequently, under the CBAs and Trust Agreement, Seacoast became obligated to pay withdrawal liability to the Funds for its proportionate share of the Funds' unfunded vested benefits, or $19,711. *See* Compl. ¶ 24; *see also* Ryan Decl. Ex. A (Report on Employer Withdrawal Liability). As required under the statute, the Funds sent a letter to Seacoast on June 28, 2013 demanding payment of its withdrawal liability and informing Seacoast that it could make monthly installment payments of $1,344.56, beginning on August 1, 2013. *See* Compl. ¶ 25; *see also* Ryan Decl. Ex. B (June 28, 2013 Letter). The June 28, 2013 letter also notified Seacoast that failure to timely make the withdrawal liability payments would constitute a default entitling Plaintiffs to accelerate the amount due. *See id.* Finally, the June 28, 2013 letter advised Seacoast of its statutory right to challenge Funds' assessment of withdrawal liability. *See id.* Seacoast never challenged Plaintiffs' determination of withdrawal liability and failed to make the first installment payment on August 1, 2013. *See* Compl. ¶¶ 26–27; *see also* Ryan Decl. ¶ 20. As a result, the Funds sent Seacoast a second letter on September 12, 2013, notifying Seacoast of its default. *See* Compl. ¶ 27; *see also* Ryan Decl. Ex. C (Sept. 12, 2013 Letter). To date, Seacoast has not remitted any payment in full or partial satisfaction of its withdrawal liability. *See id.;* Ryan Decl. ¶ 22. Under the statute, Seacoast's failure to remit its monthly payments within 60 days of receiving notice of its delinquency operates to accelerate the entire amount of its withdrawal liability. *See id.* ¶ 28. Accordingly, Plaintiff claims it is entitled to

the entire amount of unpaid withdrawal liability, together with prejudgment interest, liquidated damages, costs, and attorneys' fees.

## C. Seacoast's Default

Based on the events outlined above, the Funds brought claims against Seacoast for violations of the CBAs, the Trust Agreement, and ERISA. As set forth above, Seacoast never responded or otherwise moved with respect to the Complaint. Seacoast's default was noted by the Clerk of the Court on June 25, 2014, DE [9], and the Funds moved for a default judgment on October 3, 2014, DE [11].

## II. *Legal Standards*

### A. Standard of Review

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."), which provides for a two-step process. *See* Fed. R.Civ.P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir.2011); *Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, CV 13–01873, 2014 WL 1399417, at *3–*4, 2014 U.S. Dist. LEXIS 50752, at *6–*7 (E.D.N.Y. Feb. 28, 2014) (Report and Recommendation), *adopted by* 2014 U.S. Dist. LEXIS 49993 (E.D.N.Y. Apr. 10, 2014). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed.R.Civ.P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See id.* Rule 55(b).

▮ Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992); *Ferrara v. PJF Trucking LLC*, 13–CV–7191, 2014 WL 4725494, at *5–*6, 2014 U.S. Dist. LEXIS 134095, at *9–*10 (E.D.N.Y. Aug. 14, 2014) (Report

and Recommendation), *adopted by* 2014 U.S. Dist. LEXIS 133723 (E.D.N.Y. Sept. 22, 2014); *Ava Shypula*, 2014 WL 1399417 at *4, 2014 U.S. Dist. LEXIS 50752 at *7; *Gesualdi v. Magnolia Pro Trucking Inc.*, CV 11–14082, 2012 WL 4036119, at *2, 2012 U.S. Dist. LEXIS 130203, at *5 (E.D.N.Y. Aug. 20, 2012) (Report and Recommendation), *adopted by* 2012 WL 4035779, 2012 U.S. Dist. LEXIS 130211 (E.D.N.Y. Sept. 11, 2012); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, CV–06–1878, 2007 WL 2891016, at *2, 2007 U.S. Dist. LEXIS 99935, at *4 (E.D.N.Y. Sept. 11, 2007) (Report and Recommendation), *adopted by* 2007 U.S. Dist. LEXIS 72789 (E.D.N.Y. Sept. 28, 2007); *see also* Fed.R.Civ.P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied").

▮ However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Profi–Parkiet Sp. Zoo v. Seneca Hardwoods LLC*, 13 CV 4358, 2014 WL 2169769, at *3, 2014 U.S. Dist. LEXIS 71289, at *11 (E.D.N.Y. May 23, 2014) (Report and Recommendation), *adopted by* 2014 WL 2765793, 2014 U.S. Dist. LEXIS 83128 (E.D.N.Y. Jun. 18, 2014) (internal quotation omitted); *see Bravado Int'l Grp. Merchandising Servs., Inc. v. Ninna, Inc.*, 655 F.Supp.2d 177, 186 (E.D.N.Y.2009). Liability is not established simply because the complaint remains unanswered. *See PJF Trucking*, 2014 WL 4725494 at *5–*6, 2014 U.S. Dist. LEXIS 134095 at *10. This is because a default does not establish those allegations which are conclusory and it does not excuse defects in the pleadings. *See id.; see also Gunawan v. Sake Sushi Rest.*, 897 F.Supp.2d 76, 83 (E.D.N.Y. 2012); *Said v. SBS Elecs., Inc.*, CV 08–3067, 2010 WL 1265186, at *2–*3, 2010

U.S. Dist. LEXIS 31744, at *6–*7 (E.D.N.Y. Feb. 24, 2010), *adopted as modified,* 2010 WL 1287080, 2010 U.S. Dist. LEXIS 144067 (E.D.N.Y. Mar. 30, 2010). Accordingly, the district court must determine whether the plaintiff's allegations establish liability as a matter of law. *See City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 137 (2d Cir.2011); *Ava Shypula,* 2014 WL 1399417 at *4, 2014 U.S. Dist. LEXIS 50752 at *8.

Courts consider three factors when determining whether to grant a default judgment: (i) whether the defendant's default was willful; (ii) whether the defendant has a meritorious defense; and (iii) the level of prejudice to the non-defaulting party if the motion is denied. *See PJF Trucking,* 2014 WL 4725494 at *5–*6, 2014 U.S. Dist. LEXIS 134095 at *10–*11; *Magnolia Pro Trucking,* 2012 WL 4036119 at *2, 2012 U.S. Dist. LEXIS 130203 at *6; *Reliance Commc'ns LLC v. Retail Store Ventures, Inc.,* CV 12–2067, 2013 WL 4039378, at *2, 2013 U.S. Dist. LEXIS 111112, at *6–*7 (E.D.N.Y. Aug. 7, 2013) (Report and Recommendation), *adopted by* 2013 U.S. Dist. LEXIS 125557 (E.D.N.Y. Aug. 29, 2013). The decision whether to grant a default judgment rests with the sound discretion of the district court. *See Shah v. New York State Dep't of Civil Serv.,* 168 F.3d 610, 615 (2d Cir.1999); *Ainbinder v. Money Ctr. Fin. Grp., Inc.,* 10–CV–5270, 2014 WL 1220630, at *2, 2014 U.S. Dist. LEXIS 39788, at *7 (E.D.N.Y. Mar. 24, 2014).

In the event that liability is established, the Court must ascertain damages with "reasonable certainty." *Credit Lyonnais Sec., Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir.1999); *see Gesualdi v. Tapia Trucking LLC,* 11–CV–4174, 2012 WL 7658194, at *1–*2, 2012 U.S. Dist. LEXIS 186663, at *4 (E.D.N.Y. Oct. 15, 2012) (Report and Recommendation), *adopted by* 2013 WL 831134, 2013 U.S. Dist. LEXIS

31739 (E.D.N.Y. Mar. 6, 2013). The inquest can be held by affidavit, without a hearing, so long as the Court endeavors to ensure that there is a basis for the damages specified in the default judgment. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997); *Tapia Trucking,* 2012 WL 7658194 at *1–*2, 2012 U.S. Dist. LEXIS 186663 at *4–*5.

### B. Applicable Law

The inquiry begins with whether the factual allegations set forth in the Complaint, which are now taken as true, establish liability. *See, e.g., PJF Trucking,* 2014 WL 4725494 at *7, 2014 U.S. Dist. LEXIS 134095 at *13 ("Although Defendant's default constitutes an admission of all factual allegations in the Complaint as they relate to liability, Plaintiffs must nevertheless demonstrate that the uncontested allegations set forth valid claims"). Plaintiffs claim that Defendant's liability stems from: (i) its failure to pay contributions due under the CBAs and ERISA; and (ii) its complete withdrawal from the Funds and subsequent failure to satisfy the resulting withdrawal liability under the CBAs and ERISA.

#### 1. *Unpaid Benefits Contributions*

ERISA provides that an employer is obligated to make contributions to multiemployer benefits plans under a collective bargaining agreement in accordance with the agreement's terms. *See* 29 U.S.C. § 1145; *see also La Barbera v. J.D. Collyer Equip. Corp.,* 337 F.3d 132, 134 (2d Cir.2003) (applying 29 U.S.C. § 1145); *Tapia Trucking,* 2012 WL 7658194 at *2, 2012 U.S. Dist. LEXIS 186663 at *5. ERISA further provides for statutory damages in the event of noncompliance as follows:

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

### 2. *Withdrawal Liability*

■ "Withdrawal liability is part of a comprehensive legislative scheme designed to address the adverse consequences that arise when individual employers terminate their participation in, or withdraw from, multiemployer pension plans." *Burke v. Hamilton Equip. Installers, Inc.*, 02–CV–519, 2006 WL 3831380, at *4, 2006 U.S. Dist. LEXIS 74850, at *11 (W.D.N.Y. Oct. 16, 2006). "Withdrawal from a multiemployer pension plan occurs when an employer 'permanently ceases to have an obligation to contribute under the plan, or permanently ceases all covered operations under the plan.'" *Daniello v. Planned Sys. Integration*, CV 07–1729, 2009 WL 2160536, at *2, 2009 U.S. Dist. LEXIS 132835, at *4 (E.D.N.Y. June 25, 2009) (Report and Recommendation), *adopted by* 2009 U.S. Dist. LEXIS 61387 (July 17, 2009) (quoting 29 U.S.C. § 1383). " 'Congress determined that unregulated withdrawals from multiemployer pension plans could endanger their financial vitality and deprive workers of . . . vested [pension] rights . . . .'" *Id.* at *4, 2006 U.S. Dist. LEXIS 74850 at *11–*12 (quoting *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 227–28, 106 S.Ct. 1018, 1019, 89 L.Ed.2d 166 (1986)). Accordingly, " '[i]f an

employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under [ERISA] to be the withdrawal liability.'" *Vacca v. Bridge Chrysler Jeep Dodge, Inc.*, CV 06–3543, 2008 WL 4426875, at *5, 2008 U.S. Dist. LEXIS 85223, at *13–*14 (E.D.N.Y. Sept. 4, 2008) (Report and Recommendation) (quoting 29 U.S.C. § 1381(a)).

"Following withdrawal from a plan, the fund is vested with authority to determine the amount of withdrawal liability. It must then notify the withdrawing employer of its withdrawal liability, set a payment schedule, and formally demand payment." *Burke,* 2006 WL 3831380, at *4, 2006 U.S. Dist. LEXIS 74850, at *11 (citing 29 U.S.C. §§ 1382, 1399); *see Daniello,* 2009 WL 2160536 at *3, 2009 U.S. Dist. LEXIS 132835 at *5 ("Once an employer has withdrawn from a plan, the sponsor of the plan determines the amount of the withdrawal liability . . . and notifies the withdrawing employer of that amount and provides an amortized payment schedule." (citations omitted)). "After receiving notice of withdrawal liability from the plan, an employer must make payments according to the plan's payment schedule within 60 days of receiving the plan's demand for withdrawal liability." *Id.* at *3, 2009 U.S. Dist. LEXIS 132835 at *6. "Various statutory provisions afford the employer an opportunity to challenge the plan's assessment of the employer's liability, or to request more information." *Id.* (citing 29 U.S.C. § 1399(b)(2) (providing, in part, that within 90 days of receiving the notice, the employer may request that the plan sponsor review specific matters relating to the determination of the employer's liability and the schedule of payments); *id.* § 1401).

If the employer fails to make payments consistent with the procedure outlined

above, the plan sponsor must again notify the employer of its default and, if not cured within 60 days of receiving notice of nonpayment, "the fund is entitled to immediate payment of the employer's entire withdrawal liability, in addition to accrued interest on the total outstanding liability." *Id.* at *3, 2009 U.S. Dist. LEXIS 132835 at *6–*7; *see* 29 U.S.C. § 1399(c)(5) (providing that in the event of a default, the plan sponsor "may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made."); *Vacca*, 2008 WL 4426875 at *6, 2008 U.S. Dist. LEXIS 85223 at *15 ("Thus, '[w]hen an employer is in default, the Fund [is] entitled to require immediate payment of the entire withdrawal liability amount demanded plus interest.'" (quoting *Trustees of the Local 531 Pension Plan v. Corner Dist., Inc.*, No. 07–CV–529, 2008 WL 2687085, at *4, 2008 U.S. Dist. LEXIS 52190, at *10)).

■ "Under the structure of ERISA, any disputes over an employer's withdrawal liability are to be resolved through arbitration. Either party may initiate arbitration within 60 days after either (1) the date the employer is notified of its liability or (2) 120 days after the employer contacts the plan sponsor about any disputes or requests for review of its withdrawal liability." *Id.* (citing 29 U.S.C. § 1401(a)). "If neither party initiates an arbitration proceeding pursuant to [ERISA], 'the amounts demanded by the plan sponsor under section 1399(b)(1) [there]of ... shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in State or Federal court of competent jurisdiction for collection.'" *Id.* at *6, 2008 U.S. Dist. LEXIS 85223 at *15–*16 (quoting 29 U.S.C. § 1401(b)(1)). "[I]f an employer fails to initiate the arbitration process to contest the amount of withdrawal liability assessed

against it, the employer has waived its right to arbitration, and a federal court will not make an independent determination that the plan sponsor's assessment was unreasonable." *Id.* at *6, 2008 U.S. Dist. LEXIS 85223 at *16 (citing *Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Westchester Lace & Textiles, Inc.*, No. 05 Civ. 6138, 2006 WL 2051107, at *5, 2006 U.S. Dist. LEXIS 49845, at *14 (S.D.N.Y. July 21, 2006)); *see Bowers v. Greenpoint Warehousing & Dist. Servs., Inc.*, 91 Civ. 3784, 1992 WL 110756, at *2, 1992 U.S. Dist. LEXIS 6599, at *4 (S.D.N.Y. May 6, 1992) ("Failure to initiate arbitration within the statutory time period operates as a waiver of arbitration, thereby fixing the withdrawal liability and foreclosing any challenge to its imposition.")

Finally, "ERISA provides that '[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of Section 1145 of this title).'" *Id.* at *6, 2008 U.S. Dist. LEXIS 85223 at *16–*17 (quoting 29 U.S.C. § 1451(b)).

## III. Discussion

### A. Liability

Here, Plaintiffs' allegations, together with the uncontested facts before the Court, establish liability as a matter of law. *See Bricklayers Ins. & Welfare Fund v. Verse Inc.*, 12–CV–4271, 2013 WL 4883966, at *4, 2013 U.S. Dist. LEXIS 130102, at *8 (E.D.N.Y. Aug. 20, 2013) (Report and Recommendation), *adopted by* 2013 U.S. Dist. LEXIS 129732 (E.D.N.Y. Sept. 11, 2013).

### 1. *Unpaid Contributions*

█ First, the undisputed evidence demonstrates that Plaintiffs and Defendant were parties to and bound by the CBAs, which incorporate the Trust Agreement by reference, for the periods from 2005 to 2008 and 2008 to 2011. These operative documents specifically required Seacoast to make contributions to the Funds for employees performing work covered thereunder. *See, e.g.,* Trust Agmt. Art. IX. The evidence further demonstrates that Plaintiffs conducted audits of Seacoast's books and records, which revealed that Seacoast was delinquent on its contributions. Finally, the evidence demonstrates that, to date, Seacoast failed to cure its delinquencies despite Plaintiffs' demands. Accordingly, the Court concludes that there is a basis for liability under ERISA for unpaid benefits contributions.

### 2. *Withdrawal Liability*

█ Next, the evidence demonstrates that, based upon Seacoast's failure to make required contributions after 2009, the Funds determined that Seacoast had effected a complete withdrawal from the Funds. Consistent with its obligations under ERISA, the Funds notified Seacoast of the withdrawal on June 28, 2013, including the amount of withdrawal liability due, provided a payment schedule commencing on August 1, 2013, and notified Seacoast of its rights to challenge or otherwise seek review of the Funds' determinations. Plaintiffs provided a report prepared by the Funds' actuarial firm setting forth the method in which Seacoast's withdrawal liability was calculated; the report is undisputed and its contents are accepted as true by the Court. *See* Ryan Decl. Ex. A.

Under ERISA, Seacoast had 60 days from its receipt of that letter (until August 28, 2013) to begin making the payments. The undisputed evidence demonstrates that Seacoast failed to do so. On September 12, 2013, Plaintiffs notified Seacoast of its default and appropriately cautioned that the failure to cure within 60 days would result in acceleration of the full amount of withdrawal liability. The evidence establishes that, to date, Seacoast has not cured its default.

In addition, it is undisputed that Defendant never requested that the Funds review the determination of its liability or the schedule of payments. It is also undisputed that Seacoast never initiated an arbitration proceeding to resolve any dispute it may have had concerning the Funds' various determinations, namely: that Seacoast effected a complete withdrawal from the Funds; that the Funds calculated the amount of withdrawal liability as required under ERISA; and that Defendant was, at the time, in default of its payment obligations. "It is well-established that when a defendant fails to initiate arbitration under ERISA's provisions, the defendant's withdrawal liability becomes fixed and all defenses to that withdrawal liability are waived." *Vacca,* 2008 WL 4426875 at *7, 2008 U.S. Dist. LEXIS 85223 at *19 (collecting cases). Due to Defendant's failure to initiate arbitration proceedings, it has waived its right to do so and, more importantly, to assert any defenses to Plaintiffs' claims for recovery of withdrawal liability in this action. *See id.* at *7–*8, 2008 U.S. Dist. LEXIS 85223 at *20–*21. Accordingly, the Court concludes that Plaintiffs have sufficiently established a basis for withdrawal liability under ERISA.

### B. Default Judgment Factors

█ Having concluded that there is a basis for liability, the Court turns to the relevant factors outlined above, namely, willfulness, the existence of a meritorious defense, and prejudice, to determine

whether, under the circumstances, entry of a default judgment is appropriate.

### 1. *Willfulness*

██ "When a defendant is continually and 'entirely unresponsive,' [its] failure to respond is considered willful." *See PJF Trucking,* 2014 WL 4725494 at *6, 2014 U.S. Dist. LEXIS 134095 at *12 (citations omitted) (finding that the defendant's failure to respond to the Complaint in an ERISA default case "sufficiently demonstrate[d] willfulness."). Plaintiffs submit eight separate letters that they sent to Seacoast advising of delinquent benefit contributions, outstanding withdrawal liability, and demanding payment for both. It is undisputed that Seacoast did not meaningfully respond to the Funds' efforts. Plaintiffs also submit an affidavit of service demonstrating that Seacoast was served with the Summons and Complaint on April 14, 2014. *See* Dumornay Decl. Ex. B. Seacoast did not answer or otherwise respond to the Complaint, and did not seek an extension of time to respond. Finally, Plaintiffs submit an Affidavit of Service, DE [12], establishing that Seacoast was served with the Clerk's Certificate of Default in this case. "There is no indication that Defendant's failure to respond to the Complaint, despite being properly served, was anything but deliberate," and therefore willful. *PJF Trucking,* 2014 WL 4725494 at *7, 2014 U.S. Dist. LEXIS 134095 at *12.

### 2. *Meritorious Defense*

As noted above, Defendant's failure to seek timely arbitration under ERISA precludes it from asserting defenses to Plaintiffs' claims of withdrawal liability here. *See Trs. of the 1199 SEIU Health Care Employees Pension Fund v. Traymore Chemists, Inc.,* 13 CV 4070, 2014 WL 4207589, at *4, 2014 U.S. Dist. LEXIS 118881, at *9 (E.D.N.Y. June 25, 2014) (Report and Recommendation), *adopted by* 2014 WL 4207592, 2014 U.S. Dist. LEXIS 118232 (E.D.N.Y. Aug. 25, 2014) (holding, in the context withdrawal liability under ERISA, that "if no arbitration is initiated, the employer 'waives its right to arbitration and its right to assert any defenses in [an] action seeking withdrawal liability.'" (quoting *Bakery & Confectionary Union & Industrial Pension Fund v. Mt. Rose Ravioli & Macaroni Co., Inc.,* 2011 WL 6130975, at *2, 2011 U.S. Dist. LEXIS 142059, at *7 (E.D.N.Y. Nov. 10, 2011))); *Vacca,* 2008 WL 4426875 at *7, 2008 U.S. Dist. LEXIS 85223 at *19 ("It is well-settled that when a defendant fails to initiate arbitration under ERISA's provisions, the defendant's withdrawal liability becomes fixed and all defenses to that withdrawal liability are waived.").

In any event, even if Defendant had not waived its right to assert defenses to its alleged withdrawal liability in this collection action, the Court would nevertheless be unable to determine whether Defendant had a meritorious defense to any of Plaintiffs' claims, whether for unpaid contributions or withdrawal liability, because it did not answer or respond to the Complaint and did not oppose this motion. Accordingly, this factor weighs in favor of granting the Funds' motion.

### 3. *Prejudice*

The final factor to consider is prejudice to Plaintiffs in the event the motion is denied. A denial of a motion would be prejudicial to the Funds because there is no other method by which they can obtain relief from the Court. *See Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. JREM Const. Corp.,* No. 12 Civ. 3877, 2013 WL 618738 *4 (E.D.N.Y. Jan. 28, 2013). Accordingly, denying the motion would prejudice Plaintiffs by effectively leaving them without recourse.

Based on the foregoing, the Court concludes that a default judgment is appropriate.

## C. Damages

The final question before the Court is whether to award damages and in what amount. *See Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. and Training Fund and Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir.2012) (stating that plaintiff must still prove damages). Accordingly, the Court must assess whether Plaintiffs have produced sufficient evidence of the damages they seek. *See PJF Trucking*, 2014 WL 4725494 at *11–*12, 2014 U.S. Dist. LEXIS 134095 at *24; *Gutman v. Klein*, No. 03 Civ. 1570, 2010 WL 4975593, at *1–*2, 2010 U.S. Dist. LEXIS 124704, at *4–*5 (E.D.N.Y. Aug. 19, 2010) (Report and Recommendation).

### 1. *Unpaid Benefit Contributions*

First, Plaintiffs claim that Seacoast failed to pay contributions for the periods April 26, 2008 through June 21, 2009 (the period covered by Audit 10–0357, as amended by 10–0357–A1) and June 22, 2009 through July 25, 2010 (the period covered by Audit 11–0615). *See* Compl. ¶¶ 32–36. In support of these allegations, Plaintiffs provide affidavits from Ken Jones and Angelos Poulos, supervisors at the accounting firms engaged by Plaintiffs to audit Seacoast's compliance with its contribution obligations under the CBAs for those periods. *See generally* Jones Decl.; Poulos Decl. Each of these individuals attached reports of their findings in support of their affidavits. *See* Jones Decl. Ex. A; Poulos Decl. Ex. A. The documentation, which is undisputed, indicates that Audit 10–0357–A1 revealed unpaid benefit contributions in the principal amount of $13,621.83. *See* Compl. ¶ 34; Cody Decl. ¶ 34–35 & Ex. I. The documentation also indicates that Audit 11–0615 revealed unpaid benefit contributions in the principal amount of $27,725.58. *See* Compl. ¶ 36; Poulos Decl. ¶¶ 15–16.

Based upon my review of these affidavits and supporting documentation, I recommend to Judge Spatt that Plaintiffs be awarded unpaid benefit contributions in the total amount of $41,347.41.

### 2. *Interest on Unpaid Contributions*

Plaintiffs next seek prejudgment interest pursuant to the CBAs and ERISA. The Trust Agreement provides for the payment of interest at a rate of 1½ percent per month, or 18 percent per year, accruing from the first day of the month where payment is due to the date on which payment is made. *See* Trust Agmt., Art. IX § 3. Accordingly, Plaintiffs here seek interest on the principal unpaid contribution amounts determined by Audit 10–0357–A1 and Audit 11–0615.

The affidavit of Ken Jones purports to sets forth the interest calculation as it relates to Audit 10–0357. *See* Jones Decl. ¶¶ 26–18. However, at the time of his affidavit, Jones computed interest based upon a figure that was, as described above, subsequently modified to reflect the removal of a $670.49 credit. Accordingly, the arrived—at interest figure in his affidavit is not accurate because it is premised upon the wrong principal amount. However, the affidavit of Theresa Cody annexes a copy of Audit 10–0357–A1, which was also conducted by W & Z and also bears Jones's name as the "Assigned Auditor." *See* Cody Decl. Ex. I. The adjusted audit utilizes the correct principal amount and calculates interest through March 20, 2014 as $12,694.54. *See id.* The Court finds that this documentation satisfactorily establishes the accrued prejudgment interest on Audit 10–0357–A1 through March 20, 2014. Utilizing a method previously espoused in this district, the Court also finds

an additional $1,317.12 in accrued interest from March 21, 2014 through the filing of the instant motion, October 3, 2014. As explained by Magistrate Judge Reyes in *Daniello v. PML Furniture Group of NJ, Ltd.*, 06–CV–5261, 2009 WL 4722650, at *4 n. 5, 2009 U.S. Dist. LEXIS 131676, at *7–*8 n. 5 (E.D.N.Y. May 6, 2009), and adopted by District Judge Vitaliano at 2009 WL 4722650, 2009 U.S. Dist. LEXIS 114931 (E.D.N.Y. Dec. 9, 2009), this number was calculated by taking the number of days between March 20, 2014 and October 3, 2014 (197 days) and multiplying it by the daily interest rate of $6.72 ($13,-621.83 (delinquent contributions for Audit 10–0357–A1) × 0.18 (yearly interest) = $2,451.93 (yearly interest) / 365 days = $6.72 per day interest)). And, because the principal amount remains outstanding, daily interest at the rate of $6.72 shall continue to accrue for each day until judgment is entered.

The affidavit of Angelos Poulos sets forth the interest calculation as it relates to Audit 11–0615. *See* Poulos Decl. ¶¶ 17–18. The Court has reviewed the supporting documentation and finds that Poulos's calculations satisfactorily establish that interest of $7,237.89 accrued on Audit 11–0615 through March 24, 2011. Utilizing the methodology outlined above, the Court also finds an additional $17,606.96 in accrued interest from March 25, 2014 through October 3, 2014. And, daily interest at the rate of $13.67 shall continue to accrue for each day until judgment is entered.

Accordingly, I recommend to Judge Spatt that Plaintiffs be awarded $38,856.51 in accrued interest on the unpaid benefit contributions, through the filing of the instant motion, together with combined daily interest of $20.39 for each day until judgment is entered.

### 3. *Additional Damages on Unpaid Benefit Contributions*

Under the Trust Agreement and the statute, Plaintiffs are entitled to additional damages in an amount equal to the greater of: (i) the interest charged on the unpaid contributions, or (ii) a liquidated damages award equal to 20 percent of the unpaid contributions. *See* Trust Agmt., Art. IX § 3(c); 29 U.S.C. § 1132(g). Accordingly, Plaintiffs seek additional damages in connection with the unpaid contributions established by the audits. *See* Dumornay Decl. ¶ 32. With respect to Audit 10–0357–A1, the accrued interest as of October 3, 2014 was $14,011.66, which exceeds 20 percent of the principal delinquent amount for that period, or $2,724.37. With respect to Audit 11–0615, the accrued interest as of October 3, 2014 was $24,844.85, which is greater than 20 of the principal delinquent amount for that period, or $5,545.12. In addition, "[s]imilar to the amount of interest, the liquidated damages award continues to accrue at a [combined] daily rate of [$20.39]" each day until judgment is entered. *Magnolia Pro Trucking*, 2012 WL 4036119 at *8, 2012 U.S. Dist. LEXIS 130203 at *23 (citing *Ferrara v. Metro D Excavation & Found., Inc.*, No. 10 CV 4215, 2011 WL 3610896, at *7–*8, 2011 U.S. Dist. LEXIS 91283, at *15–*16 (E.D.N.Y. July 7, 2011) (Report and Recommendation), *adopted by* 2011 WL 3625448, 2011 U.S. Dist. LEXIS 91157 (E.D.N.Y. Aug. 16, 2011)).

Accordingly, I recommend to Judge Spatt that Plaintiffs be awarded a total amount of $38,856.51 in additional damages on the unpaid contributions covered by Audit 10–0357–A1 and Audit 11–0615, together with combined daily interest of $20.39 for each day from October 3, 2014 until judgment is entered.

#### 4. *Audit Fees*

Plaintiffs further seek the costs associated with the audits described above. *See* Dumornay Decl. ¶¶ 12–13; Cody Decl. ¶¶ 36, 38. "While ERISA does not explicitly allow for recovery of auditor fees, it authorizes 'such other legal and equitable relief as a court deems appropriate.' 29 U.S.C. § 1132(g)(2)(E). Based on this language, courts have routinely interpreted § 1132(g)(2)(E) of ERISA to authorize the cost of audits as part of a damages award." *PJF Trucking LLC,* 2014 WL 4725494 at *17, 2014 U.S. Dist. LEXIS 134095 at *38–*39 (collecting cases). Under the Trust Agreement, Plaintiffs are entitled to auditor's fees in the amount of "$350, or such other amounts as the Trustees in their discretion shall apply, plus travel expenses, for each day expended in auditing the Employer" where: (i) "[i]t is determined by such audit that the amount of the Employer's principal delinquent contributions to the Funds for the period covered by the audit exceeds .... $2,000 in the aggregate ....."; or (ii) "collection of the Employer's delinquent contributions reported by the audit is referred to the Fund's attorney, irrespective of whether such collection involves suit or other court proceeding." *See* Trust Agmt., Art. IX § 3(b). Both conditions for an award of auditor's fees are satisfied here.

According to the Funds' supporting documentation, the preparation of Audit 10–0357–A1 and Audit 11–0615 cost $1,167.40 and $1,475.00, respectively. *See* Cody Decl. ¶¶ 36, 38 & Ex. I; Poulos Decl. ¶ 20. The Court finds that Plaintiffs are entitled to recover these amounts and recommends to Judge Spatt that a total of $2,642.40 in auditor's fees be awarded.

#### 5. *Principal Outstanding Withdrawal Liability*

As described more fully above, the Court has reviewed the evidence provided in support of Plaintiffs' claims relating to Seacoast's withdrawal liability, including the undisputed report by the Funds' actuary setting forth the method in which the withdrawal liability was calculated, and finds that liability in the principal amount of $19,711 has been sufficiently established thereby. Accordingly, I recommend to Judge Spatt that judgment in that amount be awarded to Plaintiffs.

#### 6. *Interest on Outstanding Withdrawal Liability*

Plaintiffs also seek prejudgment interest, at a rate of 1½ percent per month, or 18 percent per year, accruing from the date of Seacoast's first missed payment, August 1, 2013, through the entry of judgment. *See* Ryan Decl. ¶ 23; Dumornay Decl. ¶ 21. The Trust Agreement and ERISA expressly provide for such damages. *See* Trust Agmt., Art. XI § 5; 29 U.S.C. § 1132(g)(2)(B).

The Court finds that Plaintiffs have sufficiently established the accrual of interest from August 1, 2014 through September 29, 2014 to be $4,121.28. Utilizing the methodology outlined above, the Court also finds an additional $38.88 in accrued interest from September 29, 2014 to the date this motion was filed on October 3, 2014. And, daily interest at the rate of $9.72 shall continue to accrue for each day until judgment is entered. Accordingly, I recommend to Judge Spatt that Plaintiffs be awarded $4,160.16 in accrued interest on the outstanding withdrawal liability, through the filing of the instant motion, together with daily interest of $9.72 for each day until judgment is entered.

#### 7. *Additional Damages on Outstanding Withdrawal Liability*

Plaintiffs further seek additional damages on the outstanding withdrawal liability under the Trust Agreement and ERISA. *See* Dumornay Decl. ¶¶ 23–24. Under the statute, such damages are to be calculated "in the same manner as" unpaid

benefit contributions—*i.e.,* the greater of: (i) the interest charged on the unpaid contributions, or (ii) a liquidated damages award equal to 20 percent of the unpaid contributions. *See* 29 U.S.C. §§ 1132(g), 1451(b). Here, the accrued interest as of October 3, 2014 was $4,160.16, which is greater than 20 of the principal delinquent amount, or $3,942.20. In addition, as explained above, the liquidated damages award continues to accrue at a daily rate of $9.72 for each day until judgment is entered. *See Magnolia Pro Trucking,* 2012 WL 4036119 at *8, 2012 U.S. Dist. LEXIS 130203 at *23 (citing *Metro D Excavation & Found., Inc.,* 2011 WL 3610896 at *5-*6, 2011 U.S. Dist. LEXIS 91283 at *15-*16).

Accordingly, I recommend to Judge Spatt that Plaintiffs be awarded $4,160.16 in additional damages on the outstanding withdrawal liability, together with daily interest of $9.72 for each day from October 3, 2014 until judgment is entered.

### 8. *Reasonable Attorneys' Fees*

Plaintiffs also request attorneys' fees in the amount of $13,461.34. *See* Dumornay Decl. ¶ 28; Pl. Memo of Law at 16–18. Such fees are recoverable under ERISA. *See* 29 U.S.C. § 1132(g)(2). The Trust Agreement similarly provides for the recovery of attorneys' fees in an amount "equal to the actual amount to be billed to the Trustees by their counsel for work performed in connection with th[e] matter." *See* Trust Agmt., Art. IX § 3(a).

 "Courts within the Second Circuit determine attorneys' fees according to a standard of 'presumptively reasonable fee.'" *Magnolia Pro Trucking,* 2012 WL 4036119 at *8, 2012 U.S. Dist. LEXIS 130203 at *24 (quoting *Simmons v. N.Y.C. Transit Auth.,* 575 F.3d 170, 174 (2d Cir. 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 189 (2d Cir.2008)). Under this method, "fees are calculated by multiplying a reasonable hourly rate by a rea-

sonable number of expended hours." *Tapia Trucking,* 2012 WL 7658194 at *3, 2012 U.S. Dist. LEXIS 186663 at *9-*10 (citing *Arbor Hill,* 522 F.3d at 186–90). "The Court has 'considerable discretion' in determining the presumptively reasonable fee; however, it should 'bear in mind all case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorneys' fees in setting a reasonable hourly rate.'" *Id.* (quoting *Arbor Hill,* 522 F.3d at 190). "Ultimately, the Court should be guided by what a 'reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively' would be willing to pay.'" *Id.* (quoting *Arbor Hill,* 522 F.3d at 184).

 The party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and necessity of hours spent and rates charged. *See generally N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983). A request for an award of attorneys' fees must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates on which the work was performed. *See Cruz v. Local Union No. 3 of the IBEW,* 34 F.3d 1148, 1160–61 (2d Cir. 1994).

"This District has 'routinely approved hourly rates ranging from $200–$400 for partners, $100–$300 for associates, and $70–$90 for paralegals.'" *Tapia Trucking,* 2012 WL 7658194 at *4, 2012 U.S. Dist. LEXIS 186663 at *12 (quoting *Magnolia Pro Trucking Inc.,* 2012 WL 4036119 at *9, 2012 U.S. Dist. LEXIS 130203 at *27). "However, courts in this District have accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range." *Id.* (citations omit-

ted). Here, Plaintiffs seek reimbursement for legal services rendered by the following individuals: James Grisi, of counsel, at a rate of $375 per hour until July 1, 2014, and $395 thereafter; associate Jael Dumornay, at a rate of $275 per hour until July 1, 2014, and $290 per hour thereafter; and paralegal Michelle Salerno, at a rate of $110 per hour until July 1, 2014, and $115 per hour thereafter. *See* Dumornay Decl. ¶ 27. Plaintiffs support their request with contemporaneous time records that detail the tasks the attorneys and paralegal completed for this case, and the number of hours expended on each task. *See id.* Ex. D.

Grisi, of counsel to the law firm Trivella & Forte LLP, is the attorney with "principal responsibility for this matter." *See* Pl. Memo of Law at 16. He is a 1988 graduate of Rutgers School of Law–Newark and "has been engaged in labor and employee benefits practice since 1989." *Id.; see* Dumornay Decl. ¶ 29. The records indicate Grisi spent 20.95 hours on this matter. *See id.* at 17; Dumornay Decl. Ex. D. Associate Jael Dumornay is a 2011 graduate of St. John's University School of Law and has been practicing labor and employment law for 2 ½ years. *See* Pl. Memo of Law at 17; Dumornay Decl. ¶ 29. The records indicate that Dumornay spent 15.95 hours on this matter. *See* Pl. Memo of Law at 16; Dumornay Decl. Ex. D. Finally, paralegal Michelle Salerno is "an experienced paralegal with over ten years of litigation experience." Dumornay Decl. ¶ 29. Salerno spent 2.65 hours on this case. *See* Pl. Memo of Law at 16; Dumornay Decl. Ex. D.

The Court notes that Plaintiffs' counsel, Trivella & Forte, LLP, regularly prosecutes motions for default judgments in ERISA cases on behalf of the Funds. As a result, the Court is not without guidance, from its own past practice and from judges within this district, as to the propriety and reasonableness of the hourly rates sought here. *E.g., Gesualdi v. Mech. Insulation, Inc.,* 14–cv–724, 2015 WL 729728, at *11–*12, 2015 U.S. Dist. LEXIS 22040, at *25–*27 (E.D.N.Y. Jan. 22, 2015), *adopted by* 2015 U.S. Dist. LEXIS 20024 (E.D.N.Y. Feb. 18, 2015) (Judge Seybert adopted my recommendation that damages be awarded for partner time at $400 per hour, senior associate time at $375 per hour, Dumornay's time at $275 per hour, and Salerno's time at $110 per hour); *Ava Shypula Testing,* 2014 WL 1399417, at *7–*8, 2014 U.S. Dist. LEXIS 50752, at *17–*18 (Judge Hurley adopted the Report and Recommendation of Magistrate Judge Gary Brown, which found that "$400 per hour for partner time, $375 per hour for senior associate time[,] and $110 per hour for paralegal time ... appear to be reasonable and within the community's prevailing rates."); *Gesualdi v. General Concrete, Inc.,* 11–CV–1866, 2013 WL 1192967, at *8, 2013 U.S. Dist. LEXIS 42385, at *24 (E.D.N.Y. Feb. 1, 2013) (Report and Recommendation), *adopted in relevant part by* 2013 WL 1192954, 2013 U.S. Dist. LEXIS 40441 (E.D.N.Y. Mar. 21, 2013) (Judge Amon adopted, in relevant part, the recommendation of Magistrate Judge Orenstein that Grisi be awarded an hourly rate of $250); *Magnolia Pro Trucking,* 2012 WL 4036119 at *10, 2012 U.S. Dist. LEXIS 130203 at *29 (Judge Spatt adopted the recommendation of Magistrate Judge Tomlinson that Grisi be awarded $325 per hour, an associate with six years of experience be awarded $250 per hour, and Salerno be awarded $90 per hour); *Finkel v. Detore Elec. Constr. Co.,* 11–CV–0814, 2012 WL 1077796, at *11, 2012 U.S. Dist. LEXIS 46424, at *34–*35 (E.D.N.Y. Mar. 6, 2012) (Report and Recommendation), *adopted by* 2012 WL 1078470, 2012 U.S. Dist. LEXIS 45659 (E.D.N.Y. Mar. 28, 2012) (Judge Vitaliano adopted the recommendation of Magistrate Judge Reyes that

Grisi be awarded an hourly rate of $250–$275, and approved hourly rates of $235–$260 for senior associates, $225–$250 for junior associates, and $80–$90 for paralegals); *Gesualdi v. Dan Yant, Inc.*, 6 F.Supp.3d 264, 273–74 (E.D.N.Y.2014) (Report and Recommendation), *adopted by* 2014 U.S. Dist. LEXIS 36911 (E.D.N.Y. Mar. 19, 2014) (Judge Matsumoto adopted the recommendation of Magistrate Judge Mann that attorneys from Trivella & Forte LLP with nine and 22 years of experience be awarded fees at hourly rates of $250 and $275, respectively; Salerno was awarded a rate of $100 per hour).

 Based upon my review of these cases, I find that hourly rates of $275 for Dumornay and $110 for Salerno are reasonable and are generally within the approved range for these and comparably experienced individuals performing similar services. Grisi, however, seeks a rate that not only exceeds what comparably experienced attorneys from other law firms have been awarded, but also exceeds what the courts of this district have previously determined is appropriate for him, specifically, to receive for his work on ERISA-default cases. *See, e.g., General Concrete, Inc.*, 2013 WL 1192967 at *8, 2013 U.S. Dist. LEXIS 42385 at *24 (finding hourly rate of $250 appropriate for Grisi); *Detore Elec. Constr. Co.*, 2012 WL 1077796 at *11, 2012 U.S. Dist. LEXIS 46424 at *34–*35 (finding hourly rate of $250–$275 appropriate for Grisi). And, while this Court has previously recommended an hourly rate of $400 per hour for a partner from Trivella & Forte, *see Mech. Insulation, Inc.*, 2015 WL 729728 at *11–*12, 2015 U.S. Dist. LEXIS 22040 at *25–*27, in that case the billing partner only sought reimbursement for .10 hours and the Court specifically noted that an associate "was the lead attorney." By contrast, here, Grisi claims to have been the primary attorney responsible for this case, seeking reimbursement for 20.95 hours of time. Plaintiffs' submis-

sions offer no explanation why Grisi, an attorney with 26 years of experience, was responsible for the day-to-day management of this case or how this case differed in complexity from any of the numerous other ERISA-default cases his firm handles in this court. Quite recently, this precise issue came before Judge Scanlon, who declined to award Grisi the hourly rate he seeks here. In *Gesualdi v. Interstate Masonry Corp.*, 12–CV–0383, 2014 WL 1311709, 2014 U.S. Dist. LEXIS 42554 (E.D.N.Y. Feb. 14, 2014) (Report and Recommendation), *adopted by* 2014 U.S. Dist. LEXIS 42483 (E.D.N.Y. Mar. 25, 2014), an ERISA-default case, Grisi sought reimbursement for 15.1 hours of time at a rate of $375. *See id.* at *12, 2014 U.S. Dist. LEXIS 42554 at *33. The court held that "Mr. Grisi, while he would certainly be entitled to his requested [$375] rate under similar circumstances making use of his own expertise in a strategic fashion even in a relatively uncomplex case, must receive a reduced rate for his day-to-day management of an unopposed and straightforward ERISA default case." *Id.* at *12, 2014 U.S. Dist. LEXIS 42554 at *35 (citations omitted). The court distinguished *Ferrara v. CMR Contracting LLC*, 848 F.Supp.2d 304, 314 (E.D.N.Y.2012), where attorneys with experience not unlike Grisi's were awarded $300–$400, on the grounds that those attorneys had "worked on discrete aspects of the litigation and billed minimal hours (1.6 hours total), while the judge reduced the hourly rate of the attorney managing the action's day-to-day work (31.9 hours in all) from a requested $375.00 per hour to $300.00." *Id.* at *12, 2014 U.S. Dist. LEXIS 42554 at *33–*34. Judge Scanlon stated that "[t]his is not to take away from the fact that Mr. Grisi brings special skill to the litigation of even simple cases by virtue of his experience, but it does reflect prevailing sentiment regarding market rates on uncomplex cases in

this district, which is the applicable standard" and accordingly reduced Grisi's hourly rate to $300.00 per hour. *Id.* (citation omitted). The Court agrees with Judge Scanlon's analysis and finds no reason why Grisi was the primary billing attorney on a seemingly routine "unopposed and straightforward" ERISA-default case, particularly since Dumornay, a junior associate, was also working on the matter and somehow billed an additional 15.95 hours. Accordingly, I recommend that Grisi's hourly rate be reduced to $300.

 As to the number of hours billed, Plaintiffs' counsel spent 39.55 hours on this case, which exceeds what is typical for similar ERISA-default matters. *E.g., Mech. Insulation, Inc.,* 2015 WL 729728 at *12, 2015 U.S. Dist. LEXIS 22040 at *26–*27 (approving 21.10 hours); *Tapia Trucking,* 2012 WL 7658194 at *5, 2012 U.S. Dist. LEXIS 186663 at *14–*15 (approving 32.40 hours); *Magnolia Pro Trucking,* 2012 WL 4036119 at *10, 2012 U.S. Dist. LEXIS 130203 at *30–*31 (approving 21.40 hours); *Gesualdi v. Torretta Trucking Inc.,* CV 2010–1249, 2012 WL 1102803, at *9, 2012 U.S. Dist. LEXIS 46405, at *25 (E.D.N.Y. Mar. 12, 2012) (Report and Recommendation), *adopted by* 2012 WL 1103179, 2012 U.S. Dist. LEXIS 46406 (E.D.N.Y. Mar. 30, 2012) (approving 22.8 hours of attorney time and 6.3 hours of paralegal time); *Ferrara v. Metro D Excavation & Found., Inc.,* 10 CV 4215, 2011 WL 3610896, at *7–*8, 2011 U.S. Dist. LEXIS 91283, at *20–*21 (E.D.N.Y. July 7, 2011) (Report and Recommendation), *adopted by* 2011 WL 3625448, 2011 U.S. Dist. LEXIS 91157 (E.D.N.Y. Aug. 16, 2011) (approving 32.1 hours). I have reviewed the contemporaneous billing records submitted by Plaintiffs and, while "I am satisfied that they sufficiently document the number of hours their attorneys have billed …, I conclude that they are not entirely justified." *General Concrete, Inc.,* 2013 WL 1192967 at *9, 2013 U.S. Dist. LEXIS 42385 at *26. Most glaringly, Plaintiffs' papers fail to offer an explanation for the excessive amount of time spent on this matter, which, as noted, appears to be a straightforward and unopposed ERISA-default case, without any complex factual or legal issues. Neither Plaintiffs' Memorandum of Law nor Dumornay's Declaration addresses the reasonableness of the number of hours billed in any way. Moreover, not only have Plaintiffs failed to identify a basis for upwardly deviating from the typically approved hours range, but their papers contain obvious instances of "copying and pasting" from similar motions in other cases, including, for example, references to the reasonableness of fees charged by attorney Denise Forte, who has worked on prior ERISA-default cases, but not this one. *See* Dumornay Decl. ¶ 27. In addition, certain of Plaintiffs' moving papers include blank spaces where damages calculations were intended to be inserted, but never were. *See* Pl. Memo of Law at 18. Such errors suggest to this Court that the instant matter does not materially differ in type or complexity from other cases for which attorneys routinely bill significantly less time to handle, and that Plaintiffs' counsel's time was not spent carefully preparing and proofreading the dispositive motion papers that account for the majority of the work on this case.

In addition, as observed by Judge Orenstein in *General Concrete,* a "primary source of these inflated hours is [Trivella & Forte]'s apparent practice of billing related tasks performed on the same day by a single individual separately, using the minimum billing increment of .1 hours, rather than billing the tasks together in a single entry." For example, Salerno made seven individual billing entries on March 26, 2014, each between 3 and 15 minutes long, for preparing, docketing, and then confirming the docketing of the summons,

Rule 7.1 statement, and civil cover sheet accompanying the Complaint. *See* Dumornay Decl. Ex. D. In addition, Salerno made seven more individual billing entries on April 1, 2014, each for .10 hours, for her review of this Court's Individual Rules and correspondence with State agencies regarding service of process. *See id.* Based on the regularity with which Trivella & Forte, and Salerno specifically, have litigated such cases in this Court and others within the district, there is no clear justification for such unnecessary billing. This is particularly true since Salerno, who boasts "over ten years of litigation experience," Dumornay Decl. ¶ 29, bills at an hourly rate significantly higher than what has been approved for paralegals in this district. *See supra* at 104–06 (collecting cases indicating typically approved hourly rates of $80–$90 for paralegals). In addition, Grisi, the senior attorney on the case, billed more than $1,800 for time he spent on telephone calls and responding to. e-mails, many of which were internal, occurring between him and others in his Firm. *See id.* On the whole, I find that a least a portion of the time for which Plaintiffs seek reimbursement was "excessive, redundant, or otherwise unnecessary." *General Concrete, Inc.,* 2013 WL 1192967 at *9, 2013 U.S. Dist. LEXIS 42385 at *27–*28 (citation omitted). As courts in this district have done in similar cases, where "a painstaking review of each time-entry" would consume too many judicial resources, I find that under the circumstances of this case, "an 'across-the-board percentage' cut of the total amount of time claimed" is appropriate. *Id.* (applying a 40% across-the-board reduction and collecting applicable cases); *see Gesualdi v. Fortunata Carting Inc.,* 5 F.Supp.3d 262, 282 (E.D.N.Y.2014) (Report and Recommendation), *adopted by* 2014 U.S. Dist. LEXIS 36281 (E.D.N.Y. Mar. 19, 2014) (applying a 50% across-the-board reduction and collecting applicable cases); *Fink-*

*el v. Universal Elec. Corp.,* 970 F.Supp.2d 108, 129 (E.D.N.Y.2013) (Report and Recommendation), *adopted by* 2013 U.S. Dist. LEXIS 122028 (E.D.N.Y. Aug. 27, 2013) (applying a 25% across-the-board reduction and collecting applicable cases); *Finkel v. Hall–Mark Elec. Supplies Corp.,* 07–CV–2376, 2009 WL 3401755, at *11–*12, 2009 U.S. Dist. LEXIS 104887, at *38–*40 (E.D.N.Y. Sept. 25, 2009) (Report and Recommendation), *adopted in relevant part by* 2009 WL 3401747, 2009 U.S. Dist. LEXIS 97435 (E.D.N.Y. Oct. 20, 2009) (applying a 40% across-the-board reduction where "the number of hours billed for a case in which the defendants defaulted seem[ed] excessive, particularly in light of the number of errors and omissions in the motion papers"). Since the number of hours sought here, 39.55, is approximately 45 percent higher than the average of approved hours in the cases collected above, 27.22, I recommend to Judge Spatt that, under the circumstances, a 40 percent reduction in Plaintiffs' counsel's billed hours, from 39.55 to 23.73 is both reasonable and warranted.

Accordingly, I recommend that Plaintiffs be awarded $6,577.65 in fees, derived as follows: 12.57 hours at $300 per hour for Grisi; 9.57 hours at $275 per hour for Dumornay; and 1.59 hours at $110 per hour for Salerno.

### 9. *Costs of the Action*

 Finally, Plaintiffs seek reimbursement for costs which total $587.34. *See* Dumornay Decl. Ex. D. Specifically, Plaintiffs seek to recover the $400 filing fee for this action, $175 related to effecting service of process upon Defendant, and minor miscellaneous costs for postage and access to the Court's docketing system. *See id.* Plaintiffs provide contemporaneous billing records in support of these requests. *See id.* However, the Court is again compelled to note that Plaintiffs' papers were either carelessly drafted or mistakenly

submitted in draft form; in this regard, the final sentence of Plaintiffs' Memorandum of Law reads: "The total amount of costs expended in this action is $ \_\_\_\_ .... Thus, the Trustees seek an award of $ \_\_\_\_." Pl. Memo of Law at 18 (blanks in original).

Nonetheless, ERISA provides for the recovery of costs associated with the litigation, *see* 29 U.S.C. § 1132(g)(2)(D), and "[a] court will generally award 'those reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee paying clients,'" *Finkel v. Jones Lang LaSalle*, 2009 WL 5172869 at *6, 2009 U.S. Dist. LEXIS 129926 at *16 (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir.1987)). This Court finds Plaintiffs' request for costs reasonable and adequately supported. *See id.* (awarding $464.68 for "filing fees, service of process, and some postage and photocopying"); *see also Ava Shypula Testing & Inspection*, 2014 WL 1399417 at *8–*9, 2014 U.S. Dist. LEXIS 50752 at *19 (awarding $601.80 for the court-filing fee, service of process on the defendant, postage, photocopying, and accessing the docket); *PJF Trucking LLC*, 2014 WL 4725494 at *21–*22, 2014 U.S. Dist. LEXIS 134095 at *47–*48 (awarding 492.69 for costs associated with service of process, postage, and copying); *Bldg. Material Teamsters*, 2012 U.S. Dist. LEXIS at *23–*24 (awarding $386.24 for filing fees, photocopies and postage); *Tapia Trucking*, 2012 WL 7658194 at *5, 2012 U.S. Dist. LEXIS 186663 at *15 (awarding $625.04 for "court filing fees, service of process costs, and other related fees, including photocopying and postage"); *Magnolia Pro Trucking*, 2012 WL 4036119 at *11, 2012 U.S. Dist. LEXIS 130203 at *33–*34 (awarding $588.85 for "postage, process service fees and court filing fees"). Accordingly, the Court recommends that Plaintiffs be awarded $587.34 in costs.

## IV. Conclusion

In accordance with the foregoing, the undersigned recommends to Judge Spatt that Plaintiffs' motion for a default judgment be granted and damages be awarded as follows:

| | |
|---|---|
| Unpaid Contributions | $41,347.41 |
| Interest on Unpaid Contributions Calculated Through 10/03/14 | $38,856.51 |
| Liquidated Damages on Unpaid Contributions Calculated Through 10/03/14 | $38,856.51 |
| Audit Fees | $2,642.00 |
| Outstanding Withdrawal Liability | $19,711.00 |
| Interest on Outstanding Withdrawal Liability Calculated Through | $4,160.16 |
| Liquidated Damages on Withdrawal Liability Calculated Through | $4,160.16 |
| Attorneys' Fees | $6,577.65 |
| Costs + | $587.34 |
| | $156,898.74 |
| Daily Interest on Unpaid Contributions From 10/03/14 Through Entry of Judgment + | $20.39/day |
| Continued Accrual of Liquidated Damages on Unpaid Contributions From 10/03/14 Through Entry of Judgment + | $20.39/day |
| Daily Interest on Outstanding Withdrawal Liability From 10/03/14 Through Entry of Judgment + | $9.72/day |
| Continued Accrual of Liquidated Damages on Outstanding Withdrawal Liability From 10/03/14 + | $9.72/day |

Through Entry of Judgment

## V. Objections

A copy of this Report and Recommendation is being served on Plaintiffs by electronic filing on the date below. Plaintiffs are directed to serve a copy of it on Defendant and promptly file proof of serve by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 72.

Filed March 3, 2015.